ZANES et ux. v. MERCANTILE BANK & TRUST CO. OF TEXAS et al.

No. 11169.

Court of Civil Appeals of Texas. Dallas.

Rehearing Denied May 23, 1932.

Feb. 27, 1932.

. Smithdeal, Shook, Spence & Bowyer, of Dallas, for appellants.

W. M. Holland, Carl B. Callaway, and Martin B. Winfrey, all of Dallas, for appellees.

VAUGHAN, J.

On September 5, 1931, the Mercantile Bank & Trust Company of Texas filed suit in the court below, against W. R. Zanes and Seth Tate, on a promissory note of date March 19, 1931, for $18,000 in favor of the bank, together with interest and attorneys' fees due thereon, and for the foreclosure of an alleged equitable lien on certain stock certificates as security for the note. The bank, among other things, alleged that on May 22, 1930, Zanes and Tate owed the bank the sum of $22,200, and on that date Tate, acting for himself and for Zanes, executed a note for the sum of $22,200, payable to the bank; that the note sued upon was a renewal thereof; that Zanes and Tate delivered to the bank, as collateral, to secure the $22,200 note, a certain note dated May 21, 1930, executed by Nichols-Gillette Transfer & Warehouse Company, dated May 21, 1930, payable on demand after date to the order of W. R. Zanes for $20,200; that Zanes and Tate each individually indorsed said note; that Tate, acting for himself and Zanes, executed a collateral agreement in favor of the bank, which in part provides: "That any and all securities or other property heretofore, now or hereafter pledged, or delivered by any of undersigned, their agents, attorneys or representatives, to said bank to secure any indebtedness of said bank, shall be held and construed to be pledged hereunder and as if fully described herein, and may be held by said bank as security for any and all debts and obligations of any or all of undersigned to said bank for the payment of money, whether such debts, liabilities and obligations now exist, or are hereafter incurred or arise, and whether the obligations or liability thereon of the undersigned or any of them be direct, contingent, primary, secondary, joint, several, joint and several, or otherwise, and whether such obligations be of the same character or different."

The bank further alleged that, on or about September 2, 1931, Zanes deposited with the bank $18,000, to be held by it as collateral security for the payment of the note sued upon; that, prior to making the deposit, Zanes

and Tate had purchased the stocks on which lien was claimed from the Dallas branch of the brokerage house of E. A. Pierce & Co., and that Zanes borrowed from Pierce & Co. on said stocks, as collateral, the sum of $18,000, which Zanes placed with the bank as security for the payment of said partnership debt; that Zanes, through certain acts of fraud and misrepresentations (specifically alleged in its petition), withdrew the deposit of $18,000 by his check payable to Pierce & Co., and thereby repossessed the involved stocks from Pierce & Co.; that by reason of said acts and conduct on the part of Zanes, the bank became subrogated to the lien which Pierce & Co. had against the stocks to secure the payment of the $18,000 indebtedness in favor of Pierce & Co., and that thereby the bank had an equitable lien on said stocks, and further alleged that immediately after repossessing the stocks Zanes again hypothecated same with Pierce & Co. to secure a loan of $8,000 then made to Zanes. Prayer for relief included the temporary injunction granted and the appointment of "a receiver of said partnership assets with authority to take possession of all partnership stocks belonging to said Zanes and Tate," etc.

Tate, in his answer, admitted the above allegations of the bank to be true, and based thereon and other allegations made by him sought affirmative relief against W. R. Zanes and wife, Mabel Zanes, and E. A. Pierce & Co., and prayed for a temporary restraining order against them, and for the appointment of a receiver to take possession of said stocks.

Pierce & Co. answered, in substance, that it was holding said shares of stock, named in the temporary restraining order, with the exception of 50 shares of stock in the Fireman's Insurance Company, as collateral against an indebtedness owed to it by the said Mrs. Mabel Zanes, in the sum of $8,161.-09, that the value of said stocks is constantly fluctuating, and that it has in its possession an agreement executed by the said Mrs. Mabel Zanes, conferring upon it the right at any time within its discretion to sell the certificates of stock for the benefit of said account, and credit the value thereon against any indebtedness that may be due and owing by the said Mrs. Mabel Zanes. Pierce & Co. prayed that the court enter such orders as may be proper, giving to it the authority, power, and right to sell the stocks at any time that it may deem it necessary for the protection of the indebtedness due it.

W. R. Zanes answered the bank's petition by general demurrer, special exceptions, and general denial, and denied under oath that part of the bank's petition relating to its claims of lien on the $18,000 in money, and on the stocks involved in this suit. Zanes and wife, Mabel Zanes, pleaded to the cross-action of Tate misjoinder of parties and causes of action, and in abatement alleged that Tate had no right to maintain his cross-action. W. R. Zanes filed a general demurrer, general denial, and certain special exceptions to the cross-action of Tate. Pierce & Co.'s answer was not controverted by any of the parties to the suit. As the statement of the evidence adduced will supply any material omission, in our review of the issues presented by the pleadings, no further reference thereto will be made.

On October 9, 1931, the judge of the trial court, in chambers, granted the injunctive relief and appointed a receiver, as prayed for by the bank, and Tate, and appointed John C. Harris receiver. At this hearing, the pleas of misjoinder of parties, causes of action, and in abatement, of Zanes and wife to the cross-action of Tate, and the general demurrers addressed to the pleading of the bank and the cross-action of Tate were presented and overruled. Neither Tate nor Pierce & Co. appealed from the above orders; Zanes and wife duly perfected an appeal therefrom.

The following is a statement of all of the material evidence on which the temporary injunction was granted and the receiver appointed, viz.: Milton Brown, vice president of the bank, testified that W. R. Zanes and Seth Tate had been doing business with the bank four or five years; that he, as vice president of the bank, received from Zanes and Tate a note executed by Nichols-Gillette Transfer & Warehouse Company, payable to W. R. Zanes in the sum of $20,200, as collateral to secure the indebtedness of Zanes and Tate to the bank; that the note sued upon is a part of such indebtedness; that the bank sold said collateral note, and applied the proceeds as a credit on the note sued upon; that he (Brown) discussed the note sued upon with W. R. Zanes; that he admitted it was a just debt, the obligation of himself and Tate, and that they owed it. Brown further testified that he had a conversation with Zanes about the deposit of $18,000 to secure its payment; that he called Zanes and Tate and told them the bank would have to have the money or the stocks, involved in this suit, put up as collateral behind the bank's note; that Zanes said he did not want to put up the stocks as security for the note, because his attorney told him it might jeopardize his interest in the Nichols-Gillette Transfer & Warehouse deal; that he (Brown) then asked Zanes to put up a cashier's check, and he replied that he did not want to put up anything that might jeopardize him, that his attorney told him not to; that Zanes finally agreed to deposit $18,000 with the bank, in lieu of putting up the stocks as collateral for the note; that he and Zanes had a gentlemen's agreement, to the effect that the $18,000 would be put on deposit, and would be kept until the bank's

note was paid or said stocks put up in lieu of said deposit; that Pierce & Co., sometime after the deposit was made, presented a check for $18,000, drawn by W. R. Zanes, payable to Pierce & Co. against the deposit of $18,000 carried in the name of W. R. Zanes by the bank; that he (Brown) called Zanes over the telephone and asked him what he meant by drawing the check in violation of the absolute agreement made in reference to the $18,000 deposit, to which Zanes replied, "I understand that, but I have just been in conversation with Tate; that Tate said it had been adjusted and would be paid, straighten it up in the morning;" that he (Brown) then said, "You know that we are working on a gentlemen's agreement and if you tell me again the money will be paid in the morning or the stocks put up I will go ahead and pay it, otherwise I will return the check to Pierce;" that Zanes replied, "That's absolutely the agreement, Tate will be up in the morning and verify it." Brown further testified that he was not able to get Tate on the telephone that afternoon, but got him the next morning, and found what Zanes had told him with reference to settling the note was not true; that he relied absolutely upon said representation at the time he permitted the $18,000 check to be paid; that otherwise he (Brown) would have taken his right of offset against that money; that the $18,000 check was charged to the account created by the deposit of the $18,000 as collateral security to secure the bank in the payment of the note sued upon.

J. R. Peters, a witness, testified that he was cashier for Pierce & Co. in Dallas; that he was acquainted with the account in the name of Mrs. Mabel Zanes; that the original margin card agreement executed by Mrs. Zanes in that account is filed with Pierce & Co.'s accounting unit, in New Orleans, La.; that, in connection with that account, there is what is commonly known as "trading authority" executed by Mrs. Mabel Zanes in favor of W. R. Zanes, giving him the right to buy and sell securities for her account, and releasing Pierce & Co. from any liability in the matter; that the account in the name of Mrs. Mabel Zanes was opened January 7, 1931, could not say whether the account was active prior to that time, because Pierce & Co. had carried the account in the name of W. R. Zanes; that the records of Pierce & Co. in the account of Mrs. Mabel Zanes, show a debit balance of $8,161.09 on September 30, 1931.

Tate testified that he claimed one-half ownership in the involved stocks; that he did not know that same had been transferred to Mrs. W. R. Zanes, if they had been so transferred, and did not know that the stocks had been used as collateral to secure a loan in her name; that he did not know anything about the withdrawal of the $18,-000 by check of W. R. Zanes to Pierce & Co. until it had been actually withdrawn; that he had tried several times to have Zanes to agree to a division of said stocks, each to take his part.

That the granting of the temporary writ of injunction nor the appointment of the receiver should interfere with the contractual right of Pierce & Co. in reference to the involved stock certificates, as alleged by Pierce & Co. to exist, we find the following provision contained in the order appealed from: "It further appearing to the court that the stocks above described are held by E. A. Pierce & Company to secure the payment of an indebtedness owing to said E. A. Pierce & Company, it is therefore ordered, adjudged and decreed that said injunction as against said E. A. Pierce & Company is hereby modified and the right is hereby recognized of the said E. A. Pierce & Company to transfer, sell, hypothecate or in any manner dispose of the above described stocks in accordance with the terms of the collateral agreement or pledge by which said stocks are held by said E. A. Pierce & Company and to apply the proceeds of the sale, first to the payment and satisfaction of any indebtedness owed to said E. A. Pierce & Company and to hold the remainder, if any, subject to the orders of this court."

This order only left in force the temporary writ of injunction against W. R. Zanes and Mabel Zanes, and rendered nugatory the appointment of the receiver (a) because the stock certificates, for and on account of which the appointment was made, were not within the jurisdiction of the court making the appointment, same being in the possession of Pierce & Co., beyond the territorial limits of the state of Texas; and (b) Pierce & Co. being authorized by said order to retain and dispose of the stock certificates as therein set forth, the purpose for which the receiver was appointed was rendered of no effect. We do not think that the bank's petition, nor the cross-action of Tate, was subject to the general demurrer presented against said pleas, in so far as temporary injunctive relief was sought against W. R. Zanes and Mabel Zanes. As to the ruling of the court on the pleas of misjoinder of parties, of causes of action, and in abatement, same cannot now be reviewed; this appeal being from an interlocutory order entered thereon, the right of appeal not being conferred by articles 2250 and 4662, R. C. S. 1925, from an interlocutory ruling based upon either, a plea of misjoinder of causes of action of parties, or of abatement; therefore, the ruling on said pleas can only be considered by this court on an appeal from a final judgment of the trial court disposing of the litigation on its merits. We cannot say that the order granting the temporary injunction in favor of the bank on its peti-

tion, nor in favor of Tate upon his cross-action, against W. R. Zanes and wife, Mabel Zanes, was an abuse of discretion; therefore to that extent the order appealed from is affirmed. As to the appointment of the receiver, we are of the opinion that no grounds were shown to exist making the appointment of a receiver even reasonably necessary; and furthermore, even if urgent grounds had existed, the entry of the order in behalf of Pierce & Co. would nevertheless have destroyed the order appointing the receiver of the involved stock certificates, in that he could not execute the order. We are therefore of the opinion that the order appointing John C. Harris receiver should be vacated, and the receiver discharged, and it is so ordered.

Affirmed in part; reversed and rendered in part.

## On Motions of Appellee Bank and Tate for Rehearing.

■ Appellee bank by its motion for rehearing contends that we "erred in reversing that part of the trial court's judgment appointing a receiver to take possession of the stock described" in its petition, because (a) "E. A. Pierce & Company had submitted themselves to the jurisdiction of the district court, and that the court theretofore had jurisdiction over them; that it was necessary in order to make the appointment of a receiver valid that the certificates of stock in controversy should be actually within the jurisdiction of the district court," and (b) that the effect of the order modifying the injunction granted on hearing was to "merely provide that said receiver should have the right to take possession of the said stocks subject to the lien and indebtedness against same in favor of E. A. Pierce & Company"; in other words, "the district court appointed a receiver for Zanes' equity in the stock." This theory of the case was not heretofore presented by appellee bank. E. A. Pierce & Co. duly submitted to the jurisdiction of the court, and by its answer claimed a valid lien on the involved stocks to secure the payment of $8,161.09 due them by Mrs. Mabel Zanes. All parties claiming or alleged to have title to said stocks as the owner or owners thereof, or of the equity of redemption, reside in Dallas county, Tex., and appellee bank asserts an equitable lien on said stocks against all parties to the suit, except as to the debt due Pierce & Co. Pierce & Co. maintains an office in the city and county of Dallas, with a duly accredited agent in charge for the purpose of transacting its business affairs. Under the above facts, were the certificates of stock within the jurisdiction of the court below so as to support the order appointing the receiver? This question involves the ascertainment of the extent the injunction operated upon that property after its modification in favor of Pierce & Co., and the situs of said stock, same being in the actual possession of Pierce & Co. in New York City at the time the receiver was appointed. In Callender Nav. Co. v. Pomeroy, 61 Or. 343, 122 P. 758–761, the court held: "'Situs' or situation imports fixedness of location. In its natural signification the term is applicable only to landed estates which are really fixed and immovable. Conventionally it is applied to personal property as annexing it to the individual to whom it belongs, its situation being primarily, in legal contemplation, where the owner happens to be at any time. It is the exception that personal property has any other situs than that of the person of its owner."

To the same effect is the holding in Pleasanton v. Johnson, 91 Md. 673, 47 A. 1025, and in Commonwealth v. Union Refrigerator Transit Co., 118 Ky. 131, 80 S. W. 490, 491, 81 S. W. 268. It is clear from the following authorities that the court below had the power to appoint a receiver for the equity of W. R. Zanes and Tate in the certificates of stock, viz.: subdivisions 1 and 2, art. 2293, R. S. 1925; 53 C. J. 31, § 17; Bank of Statesboro v. Waters, 165 Ga. 848, 142 S. E. 156; Freeman v. Stewart, 119 Ala. 158, 24 So. 31; Jenkins v. Purcell, 29 App. D. C. 209, 9 L. R. A. (N. S.) 1074.

■ Appellee Tate, as grounds for his motion, urges that the court erred in holding and in stating in its original opinion "that reasonable grounds for the appointment of a receiver were not shown in the cause." Said appellee alleged in his pleadings that he owned a half interest in the stocks; that they were transferred without his consent; that W. R. Zanes had appropriated to his own use all of the stocks, and was attempting through a fraudulent transfer to Mrs. Mabel Zanes to dispose of the stocks to the injury of said Tate. Upon the hearing had upon the cause Tate testified to the facts set forth in his pleadings. Neither W. R. Zanes nor Mrs. Mabel Zanes appeared for the hearing, and the answer filed by them to the pleadings of the bank was only in part verified, and the answer filed by W. R. Zanes to the pleadings of appellee Tate was not verified, being merely formal. Therefore we are of the opinion that the trial court was warranted in believing that, unless some relief was granted, said stocks would be disposed of to the injury of Tate, both as an owner of one-half interest thereof and as a joint debtor with W. R. Zanes to appellee bank; namely, the note declared upon by the bank to secure the payment of which it asserted an equitable lien upon said stocks.

Said motions are therefore granted, and the appointment of the receiver is affirmed, with instruction to the court below to make such an order or orders, in re the power and

authority of the receiver to obtain possession of, control, use and make disposition of said certificates of stocks that will secure to the appellee bank and Tate respectively the ultimate protection in the rights asserted by them if same should be sustained; having due regard for the interest of and consequences to all of the parties claiming adversely to said bank and Tate an interest therein, so that while protecting the rights of one litigant no injustice will be done to another.

Motion granted.

## On Appellants' Motion for Rehearing.

■ The first ground of this motion alleges error in affirming this cause as to granting the injunction, because the application for the temporary injunction was not verified as required by law. The verification by affiant was "that the allegations contained in the foregoing petition are to his best knowledge true and correct"; that this would not be a sufficient verification for the granting of the temporary writ of injunction on an ex parte hearing is well established by the following authorities, viz.: Article 4647, R. S. 1925; State Banking Board v. Smyth (Tex. Civ. App.) 2 S.W.(2d) 536; Wilkening v. Wolff (Tex. Civ. App.) 220 S. W. 598; Lane v. Jones (Tex. Civ. App.) 167 S. W. 177; Kopplin v. Ludwig (Tex. Civ. App.) 170 S. W. 105; Robertson v. Economy Plumbing Co. (Tex. Civ. App.) 269 S. W. 481; Butler v. Remington (Tex. Civ. App.) 230 S. W. 224.

In construing article 4647, supra, the court in the case of Butler v. Remington, supra, stated: "This affidavit must state that the facts upon which the applicant relies to sustain his injunction are true, and an affidavit upon information and belief is insufficient."

■ The other cited cases, supra, in effect hold that an affidavit to a petition must be an unequivocal statement of facts, and an affidavit upon which an indictment for perjury would lie if the facts prove to be false. Each one of the above reported cases involved the granting of a temporary injunction upon an ex parte hearing. Therefore the rule expressed therein is not applicable to a case where a hearing was had and no special exception was addressed to the sufficiency of the affidavit. The order granting the temporary injunction in the instant case was made on and after a hearing had been had upon that particular matter, in which the insufficiency of the affidavit to Tate's petition was not raised by appellants in such a way as to have caused or enabled the trial court to pass upon its sufficiency, said question being presented for the first time on this appeal. In the case of Collin County School Trustees v. Stiff (Tex. Civ. App.) 190 S. W. 216, and Wilkinson v. Lyon (Tex. Civ. App.) 207 S. W. 638, it is in substance held that

a defective verification of a petition for injunction is waived by the defendant who addressed no special exception to the petition, but relies solely on general demurrer and lack of jurisdiction, complaining of improper verification only in the Court of Civil Appeals. This rule is of course not true in cases where an injunction grows out of an ex parte hearing.

The second and fourth grounds of this motion present in effect the same contention, viz.: That this court "erred in affirming the judgment of the trial court granting the temporary injunction on the application of the appellee Tate; for the reason that Tate had not verified his application as required by law, and failed by his evidence to make a prima facie case entitling him to injunctive relief."

The injunction, as shown by the record, was granted upon a hearing, at which the evidence introduced established that one-half of the stocks belonged to Tate; that without his knowledge or consent all of said stocks had been transferred by W. R. Zanes to Mrs. Mabel Zanes, under circumstances that cast strong suspicion on said transaction, and that she had pledged the stocks to E. A. Pierce & Co. as security for a loan of $8,161.09 made either to her or W. R. Zanes, and had placed it in the power of said Pierce & Co. to sell said stocks in New York at any time without notice to any one. The facts thus established, we think, were sufficient to warrant the granting of injunction against Mrs. Mabel Zanes, as well as W. R. Zanes.

By the third ground of this motion appellants contend that this court "erred in affirming the judgment of the trial court granting a temporary injunction on the application of the appellee bank enjoining Mrs. Mabel Zanes from transferring, selling or otherwise disposing of the stocks in question; for the reason that the petition of the said bank did not pray for an injunction against her. Said bank did not make her a party to the suit."

■ The court had before it for consideration the whole case as made respectively by the pleadings of appellee bank and Tate. The allegations of Tate's cross-action are so inter-related with and in support of the allegations of the bank's petition as to relief sought, both by injunction and for the appointment of a receiver, based upon the rights asserted by said parties respectively in and to the involved stocks, for the purpose of protecting the stocks from the alleged conduct and designs of W. R. Zanes and Mrs. Mabel Zanes in behalf of the bank as to the lien asserted by it against said stocks, to secure the indebtedness claimed by the bank against W. R. Zanes and Tate, and the interest of Tate remaining in said stocks, after the demands of Pierce & Co., and of the bank against same shall have been satisfied, that it cannot

be said that the granting of the injunction against Mrs. Mabel Zanes, to protect the rights of the bank in the stocks as asserted by it, was not fully authorized. Certainly it cannot be held, under the record as presented in this case, that, because the effect of said injunction would inure to the benefit of the bank, the granting of same was erroneous. This view, we think, is fully warranted by the following allegations of Tate's cross-action:

"Defendant Tate represents to the court that according to his information and belief the facts alleged by the plaintiff, as a basis for the equitable lien claimed by the plaintiff against the stocks referred to in plaintiff's petition, are true and correct, and defendant Tate represents to the court that because of such facts the plaintiff has an equitable lien against the stocks, more particularly hereinafter referred to.

"Defendant Tate specially represents to the court that the debt of the plaintiff has not been paid and that for the payment of such debt and to secure such debt the plaintiff is entitled to the lien which it asserts against the stocks particularly referred to.

"Seth Tate, both as a defendant herein and as a complainant herein, represents to the court that the stocks above listed (being the stocks described in plaintiff's first amended original petition) are owned by himself and the defendant Zanes jointly; that they are partners in the ownership of such stocks; that the said Tate owns, and is entitled to, a one-half interest in and to all such stocks and shares of stocks; that the defendant Zanes has taken into his possession all of such stocks and, without the consent of the said Tate, has appropriated to his use all of such stocks and that the said Zanes at the present time, either through himself or through others, as more particularly hereinafter referred to, is at the present time withholding from the said Tate all of such stocks and is appropriating unto the use of the said Zanes all of such stocks, to the injury and damage of the said Tate, as more particularly hereinafter alleged.

"Your complainant Tate further represents to the court, and upon information and belief alleges, that the said W. R. Zanes, has heretofore unlawfully attempted to transfer the stocks hereinabove mentioned to his wife, Mrs. Mabel Zanes, and that in addition the said stocks have in some manner, the details of which are unknown to this complainant, been hypothecated with E. A. Pierce & Company; that the purported transfer of the said stocks to Mrs. Mabel Zanes was unlawful, and without consideration and was fraudulent, being made for the sole purpose of attempting to transfer the said stocks in such a manner as to deprive the said Tate and the plaintiff in this case of their respective rights and interests in and to said stocks.

"Complainant Tate affirmatively shows to the court that he fears that the said W. R. Zanes or the said Mrs. Mabel Zanes or the said E. A. Pierce & Company, unless restrained by this Honorable Court, will in some manner transfer or attempt to dispose of such stocks in such a way as to deprive the said Tate and the said plaintiff herein of their interests and rights in and to such stocks, to the great loss, injury and damage of the said Tate and the said plaintiff herein."

It affirmatively appears from said allegations that appellee Tate was seeking relief against all of the parties named therein, both by the appointment of a receiver for the involved stocks and the issuance of a writ of injunction, preventing any of said parties from assigning, hypothecating, or in any manner disposing of or removing from the jurisdiction of the trial court said stocks, or any part of them, primarily for the benefit of himself and appellee bank. Tate being a party defendant to the suit, asserting ownership to an undivided one-half interest in the stocks, had the same right to seek and obtain the appointment of a receiver for said property as a "party whose right to or interest in the property or fund, or the proceeds thereof, is probable," as the plaintiff in a suit under subdivision 1, art. 2293, R. S. 1925, "where it is shown that the property or fund is in danger of being lost, removed or materially injured." Therefore the fact that appellee bank did not make Mrs. Mabel Zanes a party defendant to its suit could not restrict the appointment of the receiver for the stocks to the rights of Tate thereto, the receivership being for the protection of the rights and for the benefit of all parties to the suit, "whose right to or interest in the property or fund or the proceeds thereof is probable." In other words, the receiver was not appointed for the benefit of any particular party to the suit, but of the involved property for the benefit of all of the parties interested therein. Generally, remedy of receivership is purely ancillary, being proceeding in rem. Scholl et al. v. Allen, Judge, 237 Ky. 716, 33 S.W.(2d) 353. Right to receivership on statutory grounds is determinable by statute rather than by rules of equity in respect thereto. Zanes v. Lyons (Tex. Civ. App.) 36 S.W.(2d) 544. A "receiver" is an indifferent person, between the parties to a cause, appointed by the court to receive and preserve the property or fund in litigation pendente lite. Kokernot v. Roos (Tex. Civ. App.) 189 S. W. 505. To the same effect see Republic Trust Co. v. Taylor (Tex. Civ. App.) 184 S. W. 772. In Lauraine v. Ashe, 109 Tex. 69, 191 S. W. 563, 565, 196 S. W. 501, it was held: "The power

'of the court to appoint the receiver proceeds from its jurisdiction of the cause and is an element of it." In the case of Hayes v. Gardner (Tex. Civ. App.) 40 S.W.(2d) 917, "order for appointment of receiver held not void because of insufficiency of petition seeking receivership, where appointment was justified on basis of petition in intervention."

We therefore hold that the injunction against Mrs. Mabel Zanes, in aid of the receivership for the involved property, was properly granted.

■ The eighth ground of this motion challenges the refusal of this court to pass upon the order of the trial court on appellants' plea of misjoinder as to parties and causes of action and plea in abatement, "inasmuch as these pleas related to the right of the parties to injunctive relief and were properly presented to the court." We have carefully considered the case of the City of Brownsville v. Fernandez (Tex. Civ. App.) 202 S. W. 112, 115, cited by appellants in support of this contention; also reviewed Turner v. Turner, 47 Tex. Civ. App. 392, 105 S. W. 237; Gulf National Bank v. Bass (Tex. Civ. App.) 177 S. W. 1019; Swearingen v. Swearingen (Tex. Civ. App.) 165 S. W. 16, the cases listed therein as authorities for the holding in the Brownsville Case relied upon by appellants. We do not think that the language, "The present case is before us on an appeal from an order granting a temporary injunction, and under these circumstances we must consider all the orders of the court presented for consideration," can be accepted as authority in the instant case, unless same be received and applied as having reference to such orders as were necessarily involved in determining the question presented in reference to and having to do with the right of the appellant in that case to the temporary injunction granted. The authorities cited in the Brownsville Case, supra, we do not think support the broad proposition that all orders entered upon the hearing of an appealable interlocutory matter made on other issues, from which no appeal is authorized by law, must be considered in and as a part. of the authorized appeal although not necessary to fully pass upon the order properly appealed from. The involved pleas are prima facie dilatory, and only in rare instances could in effect become pleas in bar, and in no respect is either one of said pleas to be addressed to and upon the merits of a cause. Appellants urge that the involved pleas should be given the same consideration on this appeal that would be accorded a general demurrer. To this we cannot assent. A general demurrer is addressed to the merits of a cause, in that its effect is to admit all of the material allegations to be true, and to urge as a matter of law that on the facts so admitted plaintiff is not entitled to the equitable relief sought, in that he has failed to state a cause of action, and, if properly sustained, the demurrer terminates the litigation. The right of appeal is not given from an order made on a plea of misjoinder, either of the parties or causes of action, or on a plea in abatement, and unless a reasonable necessity should exist therefor, an order made on either of said pleas is not to be reviewed on an appeal from an order appointing a receiver and granting a temporary injunction in aid of such receivership proceedings. This rule of reasonable necessity has no place in the instant case, in that a cause of action was alleged by appellee bank against appellant W. R. Zanes, and appellee Tate, and by Tate in his cross-action against appellants Zanes, involving the same property; neither of which would of a necessity be terminated, nor the ultimate right to the equitable relief sought based on said petitions respectively be foreclosed on either one or all of said pleas being sustained, for, if improperly overruled, the judgment of the trial court would not be reversed and rendered, but reversed and remanded for further proceedings available to appellee bank and Tate or either one of said parties, as the case .may be, to meet in the trial court the condition produced by said pleas, or either one thereof, being sustained. This because of the peculiar situation created by the inter-related rights asserted in said stocks by Tate to exist in himself and appellee bank. Tate's cross-action admitted the cause of action as alleged by the bank, both as to the debt asserted against W. R. Zanes and Tate and the right to the equitable lien asserted by the bank against all of the parties to the suit, subject only to the superior right of Pierce & Co. to subject said stock to the payment of its debt. We think it is thus made to appear from the allegations of the petition of appellee bank and the cross-action of Tate and the answers filed to said petitions by W. R. Zanes and Mrs. Mabel Zanes that it is not necessary, in order for this court to properly pass upon the question presented by this appeal, that we should consider and pass upon the orders of the court made upon the pleas of misjoinder and in abatement. Said motion is overruled.

Overruled.