TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-04-00444-CV






Gary L. Moyer, Appellant


v.


Marsha Ann Moyer, Appellee







FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT

NO. 00-15120-FC2-277, HONORABLE DERWOOD JOHNSON, JUDGE PRESIDING





O P I N I O N


 This is an appeal from an order granting turnover relief and appointing a receiver and
master in chancery who had participated in the underlying action as a testifying expert. In the
underlying action, appellee Marsha Ann Moyer was awarded a divorce from appellant Gary Moyer,
actual damages for intentional infliction of emotional distress, and punitive damages. (1) Gary did not
supersede the judgment. It is undisputed that, following the verdict, Gary assigned property of his
wholly-owned corporation to a pair of newly-created foreign limited partnerships in which he had
controlling interests; he also assigned certain real property from the corporation to himself
individually and proceeded to claim it as his homestead. Based on evidence of these transactions,
Marsha obtained the order on appeal in this proceeding.

 In eight issues, Gary argues that the district court abused its discretion because (1)
the turnover relief ordered by the district is insufficiently specific regarding the property to be turned
over and extends to exempt property; (2) the appointed receiver had an interest in the underlying
litigation and the district court improperly awarded him fees without a showing of reasonableness
or completed work; and (3) there was no showing of good cause to appoint a master in chancery, the
appointee had an interest in the litigation, and was not a licensed attorney. We will reverse and
remand the order as it pertains to the turnover, the receiver appointed, and the receiver's fee. We
are without jurisdiction to consider the issues related to the appointment of a master in chancery. 


BACKGROUND


 In this cause, Marsha sought a range of remedies to aid in enforcing her judgment
against Gary in the underlying action. The district court heard evidence that, around the time the
court rendered judgment on the jury's verdict, Gary undertook a series of transactions that had the
effect of:


 transferring the business assets of his wholly-owned Texas corporation, Paper
Resources International, Inc.--including office equipment, intellectual property,
tax credits, and accounts receivable--to a newly-created Alaska limited
partnership, Paper Resources International L.P., which Moyer subsequently
designated as the successor to his Texas corporation;


 transferring certain land and assets "pertinent to the land"--including livestock,
horses, a sprayer, a truck, trailers, heavy equipment, and a welder--from the
Texas corporation to a newly-created Alaska limited partnership, Florence
Investments L.P.;


 transferring the Texas corporation's 100 acres of remaining land to Gary
individually, who proceeded to claim the property as his homestead; and


 placing control of both limited partnerships in Gary, who had 98% limited
partnership interests in both, (2) as well as 100% membership in each limited
partnership's general partners, a pair of newly-created West Indies limited
liability corporations. The general partner of Paper Resources International L.P.
was Paper Resources Management, L.L.C.; the general partner of Florence
Investments L.P. was Florence Investments Management, L.L.C.



The principal place of both limited partnerships was the same Florence, Texas, address as the
original Texas corporation. (3)

 Although admitting to an earlier utterance that he had wanted to "preserve something
for myself," Gary insisted that there was nothing "illegal or immoral" about these transactions. He
emphasized that, in the underlying action, the issue of whether Paper Resources International, Inc.
was his alter ego had been submitted to the jury, which had found in the negative. Gary concluded
that because only he, and not Paper Resources International, Inc., was a judgment debtor, nothing
prevented the company from restructuring and transferring its assets so as to avoid entanglement
with Gary's personal legal problems. As he put it, "Paper Resources is and was a separate entity
from me, and I had a responsibility to do the best I could by those companies to keep them from
being subject to anything that would go wrong with me."

 Marsha characterizes the transactions as a "pattern of shifting funds and assets to
avoid execution" on the unsuperseded judgment. At the close of the hearing, the district court
granted the remedies Marsha had requested, including (1) a temporary injunction barring Gary from
transferring assets related to his businesses; (2) a charging order against Gary's interests in the two
limited partnerships, see Tex. Rev. Civ. Stat. Ann. art. 6132a-1 (West Supp. 2004-05); (3) a turnover
order; and (4) the appointment of Steve Pena, an accountant who had served as Marsha's damages
expert in the underlying case, as both receiver and master in chancery, and awarding him fees. Gary
largely did not contest either the injunction or the charging order, and neither are at issue on appeal, (4)
but contends that the district court abused its discretion with regard to other relief it ordered.


DISCUSSION


 Gary brings eight issues in which he challenges the district court's order of turnover
relief, its appointment of Pena as receiver, its fee award to Pena, and its appointment of Pena as
master in chancery.


Standard of review


 We review a turnover order, an appointment of a receiver, and an award of fees to the
receiver for an abuse of discretion. See Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex.
1991); Roebuck v. Horn, 74 S.W.3d 160, 163 (Tex. App.--Beaumont 2002, no pet.); Stanfield v.
Stanfield, No. 09-99-00453-CV, 2000 Tex. App. LEXIS 6743, at *14 (Tex. App.--Beaumont 2000,
no pet.) (not designated for publication); Rusk v. Rusk, 5 S.W.3d 299, 306-07 (Tex. App.--Houston
[14th Dist.] 1999, pet. denied); see also Fortenberry v. Cavanaugh, No. 03-04-00816-CV, 2005 Tex.
App. LEXIS 4665, at *5-6 (Tex. App.--Austin 2005, no pet. h.) (mem. op.); Schulze v. Cap
Collection JV7, No. 03-03-00390-CV, 2004 Tex. App. LEXIS 8454, at *8 (Tex. App.--Austin Sept.
23, 2004, pet. filed) (mem. op.). A trial court may be reversed for abusing its discretion if we find
that it acted in an unreasonable or arbitrary manner, without reference to any guiding rules and
principles. Beaumont Bank, N.A., 806 S.W.2d at 226.


Turnover relief


 Gary asserts in his first issue that the district court's turnover order constitutes an
abuse of discretion because it fails to identify specific non-exempt property to be turned over. In his
second, somewhat overlapping issue, he contends that the turnover order impermissibly extends to
exempt property. A "turnover" order is a statutory procedural device through which judgment
creditors may reach assets of a judgment debtor that are otherwise difficult to attach or levy by
ordinary legal process. See Tex. Civ. Prac. & Rem. Code Ann. § 31.002 (West Supp. 2004-05);
Beaumont Bank, N.A., 806 S.W.2d at 224. To obtain relief under the "turnover statute," section
31.002 of the civil practices and remedies code, a judgment creditor must prove (1) the judgment
debtor owns property, including present or future rights to property; (2) the property is not exempt
from attachment, execution, or seizure; and (3) the property "cannot readily be attached or levied on
or by ordinary legal process." Tex. Civ. Prac. & Rem. Code Ann. § 31.002(a). The district court
made the following findings regarding these statutory elements:


1. Defendant owns property described as 100% membership interest in Paper
Resources Management, L.L.C. and 100% membership interest in Florence
Investments Management, L.L.C. Paper Resources Management, L.L.C. is
purportedly the general manager of Paper Resources Limited Partnership, and
Florence Investments Management, L.L.C. is purportedly the general manager
of Florence Investments Limited Partnership. Paper Resources Limited
Partnership is purportedly the successor of Paper Resources International, Inc.,
of which Defendant is the sole owner, officer, and director;


2. These properties are not exempt under any statute from attachment, execution
or seizure for the satisfaction of liabilities.


3. These properties cannot readily be attached or levied upon by ordinary legal
process.



 Upon finding that the elements of section 31.002(a) are satisfied, a trial court has
discretion to issue a range of remedies, including ordering the judgment debtor to turn over
nonexempt property that is in the debtor's possession or is subject to the debtor's control to a
designated sheriff or constable for execution, and "appoint[ing] a receiver with the authority to take
possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the
extent required to satisfy the judgment." Id. § 31.002(b). Here, the district court appointed Steve
Pena as receiver and vested him with the following powers:


all the power and authority to take possession of all nonexempt property of Gary
Moyer that is in the actual or constructive possession or control of Gary Moyer,
including but not limited to all property incidental to or associated with the daily
operations of Paper Resources International, Inc., Paper Resources Management,
L.L.C., and Florence Investments Management, L.L.C., including but not limited to
all cash, accounts receivable, notes receivable, promissory notes, drafts and checks,
monies on deposit in financial institutions, financial accounts (bank accounts),
certificates of deposit, money market accounts, accounts held by any third party,
stocks, all securities, all real property deeds to real property, titles to automobiles or
other vehicles, boats, planes, all safe deposit boxes or vaults and the contents therein,
monies received by the Defendant in the form of checks, cash or credit card payments
or receipts; any and all causes of action or chooses of action, contract rights whether
present or future; and all furniture, fixtures, equipment, supplies and inventory, and
all documents, books and records related to any of the herein described property
(including financial records) that are in the actual or constructive possession or
control of Gary Moyer; and to pay the proceeds to Plaintiff to the extent required to
satisfy her judgment (or the balance due if the judgment has been partially satisfied)
which amount includes principal, prejudgment and postjudgment interest, together
with costs.



Gary urges that this order impermissibly fails to identify specific non-exempt property or rights
thereto that he possessed that would enable him to comply with the order, but merely employs a
"laundry list" of broad property categories with little or no relationship to the evidence. In response,
Marsha contends that it is sufficient that the order purports to be limited to "nonexempt property of
Gary Moyer that is in the actual or constructive possession or control of Gary Moyer," and identifies
"all property incidental to or associated with the daily operations of Paper Resources International,
Inc., Paper Resources Management, L.L.C., and Florence Investments Management, L.L.C." While
herself characterizing the remainder of the paragraph as a "laundry list," Marsha suggests that the
district court did not abuse its discretion in employing broad categories in the face of evidence that
Gary had been "engaged in a complicated maneuvering of assets that had converted previously non-exempt assets to homestead and that has made the execution on assets difficult."

 Gary's argument finds support in decisions invalidating turnover orders in whole or
part for lack of specificity concerning the property to be turned over. See Newman v. Toy, 926
S.W.2d 629, 631-32 (Tex. App.--Austin 1996, writ denied); Ex parte Prado, 911 S.W.2d 849, 850
(Tex. App.--Austin 1995, no writ); see also In re Montgomery, 138 S.W.3d 569, 572-73 (Tex.
App.--Beaumont 2004, pet. denied); Roebuck v. Horn, 74 S.W.3d 160, 163-65 (Tex.
App.--Beaumont 2002, no pet.); Burns v. Miller, Hiersche, Martens & Hayward, P.C., 948 S.W.2d
317, 324 (Tex. App.--Dallas 1997, writ denied); Bergman v. Bergman, 828 S.W.2d 555, 557 (Tex.
App.--El Paso 1992, no writ). Marsha attempts to distinguish these decisions as involving turnover
orders that, due to their vagueness of lack of specificity, encompassed exempt property or third-party
property, or effected other unlawful results that she asserts are not present here. In fact, some of
these decisions have appeared to link the specificity requirement to these purposes. Some emphasize
that turnover orders are in the nature of mandatory injunctions and are enforceable by contempt, and
thus implicate due process concepts. Bergman, 828 S.W.2d at 557 (order "must be definite, clear
and concise, leaving the person enjoined in no doubt about his duties, and should not be such as
would call on him for interpretations, inferences or conclusions") (citing Schultz v. Fifth Judicial
Dist. Court of Appeals, 810 S.W.2d 738 (Tex. 1991), and Gulf Oil Corp. v. Walton, 317 S.W.2d 260,
264 (Tex. Civ. App.--El Paso 1958, no writ)); see also Burns, 948 S.W.2d at 324 (same). Others
acknowledge that this requirement aids in ensuring that the turnover order does not extend to exempt
property or property of third parties. Roebuck, 74 S.W.3d at 163-64 (broad turnover order
improperly extended to assets owned in whole or part by third parties); Burns, 948 S.W.2d at 326-27
(non-specific order to turn over "cash, money orders, checks . . . in any form and in anyone's
possession which Burns beneficially owns or may own in the future" improperly extended to exempt
and currently nonexistent property). Similarly, we have recognized that a turnover order requiring
a judgment debtor to make cash payments without specifying the non-exempt asset from which the
payments are to be derived effectively forced the judgment debtor "to choose between work [to earn
the required payment] and jail," and held that "the imposition of such a choice is beyond the power
of the [turnover] statute." Ex parte Prado, 911 S.W.2d at 850.

 But the specificity requirement is not merely a means to these ends. Instead, it derives
from the statutory requirements and limitations governing turnover relief. To meet the requirements
of section 31.002, the court's order must be specific in both identifying the non-exempt property that
is susceptible to turnover relief and in tailoring the turnover relief to that property. As the Bergman
court explained:


In the Schultz opinion, the [Supreme] Court referring to the turnover statute said: 
The statute requires a factual showing that the judgment debtor has non-exempt
property that is not readily subject to ordinary execution. . . . Upon proof of the
necessary facts, it authorizes the trial court to order affirmative action by the
judgment debtor and others to assist the judgment creditor in subjecting such non-exempt property to satisfaction of the underlying judgment.



828 S.W.2d at 557 (emphasis in original). The court of appeals then elaborated that



this language certainly mandates that the trial court is to have a hearing, determine
what specific assets are exempt, and what assets are subject to the court's order and
then to direct the payment as the court determines is proper. If the statute requires
a factual showing of non-exempt property, the court has to be acting with regard to
certain specific property that it will direct be turned over to satisfy a judgment. It is
not to be left to the debtor to determine what property that person has and whether
it is exempt. Otherwise, there would be no need for any 'factual showing' by 'proof
of the necessary facts' as required by [the supreme court's] opinion.



Id.


 The turnover order in this case does not comply with section 31.002. See Tex. Civ.
Prac. & Rem. Code § 31.002. It compels Gary to turn over property beyond the sole non-exempt
property the district court found that he possessed and controlled and that "cannot readily be attached
or levied upon by ordinary legal process," his "100% membership interest in Paper Resources
Management, L.L.C. and 100% membership interest in Florence Investments Management, L.L.C." 
Moreover, the list refers to property items whose existence--whether controlled by Moyer, Paper
Resources International, Inc., or any other entity--is not supported by the evidence. For example,
there was no evidence presented regarding any "boats," "planes," and "safe deposit boxes or vaults
and the contents therein." In Newman, we invalidated a portion of an order requiring turnover of
money receipts from a podiatrist's "independent work as a sole proprietor" where there was no
evidence that he, in fact, received any sums from a sole proprietorship and, "in all events, the order
omit[ted] to identify specifically such property." Newman, 926 S.W.2d at 631-32.

 Some of the categories, as Marsha observes, do appear to encompass property whose
existence was established in the evidence. But the mere fact that general property categories in a
turnover order coincide with some actual existing property is insufficient to cure the order's lack of
specificity. The Beaumont Court of Appeals invalidated a similar turnover order that "did not make
any specific reference to the assets that were proved during the hearing" but referred generally to
"books," "stocks," "titles to automobiles," "cash," "other vehicles," and "real property/deeds to real
property." Roebuck, 74 S.W.3d at 163. Although some of these categories included specific non-exempt assets of the judgment debtor, the court reversed and remanded the order in its entirety
because "[a] reference to broad categories of assets does not constitute a reference to specific assets
that is required in a turnover order" and the order contained "numerous generalized categories of
assets without any supporting proof as to their ownership by [the debtor]." Id.

 We are similarly persuaded that we must reverse and remand the turnover order in
this case. Its fatal lack of specificity cannot be justified, as Marsha urges, by evidence of Gary's
"complicated maneuvering of assets that had converted previously non-exempt assets to homestead
and that has made the execution on assets difficult." Even if these are valid concerns, we are not
permitted to ignore the restrictions and limitations the legislature has placed in section 31.002. We
note that injunctive relief is available to prevent judgment debtors from dissipating or converting
assets and that, in fact, the district court granted such relief here. Nor did Gary's transfer of assets
appear to create uncertainty regarding the nature of the assets at issue. To the contrary, the evidence
clearly identified several specific items of business assets, real property, and assets "pertinent to the
land." To the extent that Marsha desires greater clarity concerning the nature of Gary's property, she
may seek it through post-judgment discovery. (5) See Tex. R. Civ. P. 621a.

 We sustain Gary's first issue, and reverse and remand the turnover order for further
proceedings consistent with this opinion. We thus do not reach Gary's second issue in which he
contends the current order improperly extends to exempt property, but trust that the district court,
while ensuring the required specificity regarding non-exempt property, will ensure that any further
turnover orders comply with this limitation.


Appointment of Marsha's expert as receiver


 The receiver appointed by the district court, Steve D. Pena, a certified public
accountant, had been Marsha's retained damages expert in the underlying case. Gary contends that
Pena's appointment was an abuse of discretion because Pena has an interest in the matter. We agree
that the district court abused its discretion in appointing Pena.

 The parties agree that the conflict-of-interest standard in section 64.021 of the civil
practice and remedies code governed the district court's receiver appointment. See Tex. Civ. Prac.
& Rem. Code Ann. § 64.021 (West Supp. 2004-05). Section 64.021 provides, in relevant part, that
a person appointed as a receiver for property located in this state must not be "a party, attorney, or
other person interested in the action for appointment of a receiver." Id. On appeal, the parties'
dispute focuses primarily on the meaning of "interested in the action for appointment of a receiver." 
(Emphasis added.) Gary contends that Pena, a retained expert who testified on behalf of Marsha in
the underlying action, would necessarily be interested and biased against him when acting as
receiver. Marsha does not dispute that Pena was "interested" in the underlying action, but contends
that Pena has no interest in the receivership action itself. She adds that she filed "the action for
appointment of receiver" under a separate cause number from the underlying divorce and damages
suit in which Pena testified. See id. § 31.002(d) (judgment creditor may seek turnover relief in either
same cause in which judgment was rendered or independent proceeding).

 We agree with Marsha that the focus on our inquiry must be whether Pena has a
disqualifying interest in "the action for appointment of receiver" in particular, not the underlying
action; we may not ignore the language the legislature has deliberately chosen. See Sorokolit v.
Rhodes, 889 S.W.2d 239, 241 (Tex. 1994) ("In applying the plain and common meaning of the
language in a statute, courts may not by implication enlarge the meaning of any word in the statute
beyond its ordinary meaning; such implication is inappropriate when legislative intent may be
gathered from a reasonable interpretation of the statute as it is written."); Gonzales v. Concerned
Citizens of Webberville, No. 03-05-00014-CV, 2005 Tex. App. LEXIS 5902, at *14 (Tex.
App.--Austin July 28, 2005, no pet. h.); see also James v. Roberts Tel. & Electr. Co., 206 S.W. 933,
935 (Tex. Comm'n App. 1918, judgm't adopted) (stating conflict issue in terms of "[w]hether a
receiver who is interested in the receivership . . . .") (emphasis added). However, at least where
receivers have been appointed prior to judgment, Texas courts have appeared to assume that persons
interested in the underlying action would likewise be interested in the receivership. See O'Ferral
v. Coolidge, 228 S.W.2d 146, 149 (Tex. 1950) (attorney for party was "clearly" disqualified from
serving as receiver); Zanes v. Mercantile Bank & Trust Co., 49 S.W.2d 922, 928 (Tex. Civ.
App.--Dallas 1932, writ ref'd) (receiver "is an indifferent person, between the parties to a cause,
appointed by the court to receive and preserve the property or fund in litigation pendente lite");
Crawford v. Crawford, 163 S.W. 115, 116 (Tex. Civ. App.--Texarkana 1913, no writ) ("persons
interested in the subject-matter of the litigation or results sought to be attained thereby" prohibited
from receivership appointment); see also Wiley v. Sclafani, 943 S.W.2d 107, 110 (Tex.
App.--Houston [1st Dist.] 1997, no writ) (relying on Zanes in addressing standing of receiver to
appeal).

 However, this case presents the somewhat different question of whether a retained
expert in the underlying cause may nonetheless not be interested in a post-judgment proceeding to
appoint a receiver. This appears to be a question of first impression under Texas law, as Marsha
observes. Our resolution of that issue depends in part on the nature of the "interest" with which the
legislature was concerned in section 64.021 and its statutory predecessors. See Tex. Civ. Prac. &
Rem. Code Ann. § 64.021. Texas courts have long assumed that a financial stake in one of the
parties would disqualify a prospective receiver. See, e.g., James, 206 S.W. at 935 (disqualifying
shareholder of party; citing cases involving partners appointed as receivers of partnership property
and trustees or executors appointed as receiver of trusts estates from which they were compensated);
Roberts Tel. & Electr. Co. v. Farmers' & Merchants' Nat. Bank, 155 S.W. 629, 632 (Tex. Civ.
App.--Texarkana 1913), rev'd on other grounds, 206 S.W. 933, 935 (Tex. Comm'n App. 1918,
judgm't adopted) (cashier and acting manager of bank who was also shareholder was disqualified
from serving as receiver of bank).

 However, we need not decide whether, as a general proposition, retained experts in
underlying litigation could ever be appointed as receiver in a subsequent receivership proceeding.
On the record before us, there was no evidence that Pena met the statutory requirements for serving
as receiver in this case. See Pena v. Sell, 760 S.W.2d 811, 812-13 (Tex. App.--Amarillo 1988, no
writ); see also Tex. Civ. Prac. & Rem. Code Ann. § 64.021. There was undisputed evidence that
Pena had served as Marsha's testifying expert in the underlying cause. However, Marsha did not call
Pena to testify at the hearing and offered no evidence, only argument, to establish that Pena did not
have an ongoing business relationship, financial stake, or other interest in the receivership. On this
record, we are compelled to hold that the district court abused its discretion in appointing Pena as
receiver. We sustain Gary's third issue.


Receivership fees


 In his fourth and fifth issues, Gary argues that the district court abused its discretion
by setting the receiver's fee without any evidence of reasonableness, and by allowing the receiver
to be compensated prior to his discharge. Marsha responds that the order authorizing fees is
interlocutory because the trial court did not purport to determine the total value of the receiver's fee
up to a certain time, depriving this Court of jurisdiction to consider this issue. Bergeron v. Sessions,
561 S.W.2d 551, 553 (Tex. Civ. App.--Dallas 1977, writ ref'd n.r.e.).

 The order states that "it is hereby ORDERED, DIRECTED and AUTHORIZED that
Receiver, STEVE D. PENA, CPA pay himself as receiver's fees an amount not more than twenty-five percent (25%) of all proceeds coming into his possession to be paid by the Receiver, which
amount the Court finds to be a fair, reasonable and necessary fee for the Receiver, and to distribute
all remaining proceeds to Plaintiff's attorneys. . . . Receiver fees in excess of twenty-five percent
(25%) may be awarded after application to a separate order of this Court." (Emphasis added.) The
plain language of the order indicates that at the time the order was signed, the court made a
determination that a twenty-five percent commission would be reasonable. The commission could
be collected as the proceeds came into the receiver's possession; only remaining proceeds would be
distributed. Moreover, the court found that if the receiver determined that twenty-five percent was
not sufficient, he could apply for more in a separate request. The plain language of the order results
in a final determination that twenty-five percent of proceeds was a fair, reasonable and necessary fee,
and was made when the order was signed. Therefore, the order was not interlocutory and we have
jurisdiction to consider whether there was evidence to support a finding that the fee was reasonable. 
Id.

 The receiver's fee should be measured by the value of the services rendered; the
results which are accomplished by the receiver must be considered in determining a reasonable fee. 
Stanfield, 2000 Tex. App. LEXIS 6743, at *14; B.B.M.M., Ltd. v. Texas Commerce Bank-Chemical,
777 S.W.2d 193, 198 (Tex. App.--Houston [14th Dist.] 1989, no pet.). There must be evidence to
establish reasonableness of the fee. Stanfield, 2000 Tex. App. LEXIS 6743, at *14. Furthermore,
prior to a final accounting and discharge of the receiver, only a partial advance toward a final fee
may be made because the reasonableness of the fee is measured in light of the value of the receiver's
work. Bergeron, 561 S.W.2d at 553; see Stanfield, 2000 Tex. App. LEXIS 6743, at *14; B.B.M.M.,
Ltd., 777 S.W.2d at 198. Yet, in the trial court, no evidence was presented of what would constitute
a fair, reasonable, or necessary fee.

 Marsha urges us to presume that the fee is reasonable because there was evidence that
it would be difficult to trace Gary's assets and collect them. Even assuming she is correct, however,
there was no testimony or other evidence establishing how much the receiver should be compensated
for the task. Furthermore, the value of the receiver's future or ultimate accomplishments could not
have been considered at the time the order appointing him was signed. We sustain Gary's fourth and
fifth issues.


Master in chancery


 In his sixth, seventh, and eighth issues, Gary asserts that the trial court erred by
appointing Pena as master in chancery without a finding of good cause and when Pena is not an
attorney and has an interest in the litigation. See Tex. R. Civ. P. 171. Marsha responds that the
appointment of a master in chancery is not a final, appealable order.

 Texas Rule of Civil Procedure 171 permits the trial court, "in exceptional cases, for
good cause," to appoint a master in chancery "who shall be a citizen of this State, and not an attorney
for either party to the action, nor related to either party." Id. The order gives Pena, as master, "the
fullest and broadest powers" under rule 171, including but not limited to ordering the production of
evidence, scheduling hearings, and examining witnesses under oath. Also pursuant to rule 171, Pena
must file a master's report, and the court may then confirm, modify, correct, reject, reverse or
recommit the report, after it is filed, as the court may deem proper and necessary in the particular
circumstances of the case. Id.

 As a general rule, an appeal may be taken only from a final judgment. See Lehmann
v. Har-Con Corp., 39 S.W.3d 191, 195 (Tex. 2001). A judgment is final for purposes of appeal if
it disposes of all pending parties and claims in the record, except as necessary to carry out the decree. 
Id. Because Pena must complete his master's duties and file a final report which the trial court may
accept, modify, or fully reject, among other options, the order does not fully dispose of all issues and
is interlocutory. See id. The legislature has declared that only certain narrow issues may be brought
by interlocutory appeal, and, in contrast to the receivership issues addressed previously, an order
appointing a master in chancery is not one of them. See Urso v. Lyon Fin. Servs., 93 S.W.3d 276,
278 (Tex. App.--Houston [14th Dist.] 2002, no pet.); see also Tex. Civ. Prac. & Rem. Code Ann.
§ 51.014 (West Supp. 2004-05); Hardy v. Silva, No. 01-90-00135-CV, 1990 Tex. App. LEXIS 1690
(Tex. App.--Houston [1st Dist.] 1990, no pet.) (not designated for publication) ("With respect to
the order appointing a master in chancery, we are aware of no authority authorizing an interlocutory
appeal from this order."). Accordingly, we are without jurisdiction to consider Gary's sixth, seventh,
and eighth issues. (6)


CONCLUSION


 Having sustained Gary's first five issues, we reverse and remand for further
proceedings consistent with this opinion.



 

 Bob Pemberton, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Reversed and Remanded

Filed: August 17, 2005
1. Gary has appealed this judgment, which is presently pending in Cause No. 03-03-00751-CV in this Court.
2. Gary's daughter, Annette Capriotti, was assigned a one percent interest in each limited
partnership. The remaining one percent of each limited partnership was held by its general partner. 
3. This may explain the references to Florence in the names of some of the new entities.
4. The record does not indicate whether this or any other injunctive relief is presently in effect.
5. At the turnover hearing, Gary's attorney stated that "not one single piece of post-judgment
discovery has gone out." Marsha's attorney argued that post-judgment discovery was not required
because Gary "does not get to dictate or choose how I go about collecting on my judgment."
6. We express no opinion regarding the merits of these issues in the event they are later
presented through other appellate avenues.