**Dismissed in Part and Reversed and Rendered in Part and Opinion filed February 14, 2023.**



In The

# Fourteenth Court of Appeals

---

**NO. 14-21-00178-CV**
**NO. 14-21-00179-CV**
**NO. 14-21-00180-CV**

---

**SHAWN DEANE GRUSS, AS INDEPENDENT EXECUTOR OF THE ESTATE OF MAURITA J. GALLAGHER; AND NUCLEAR SOURCES AND SERVICES, INC., Appellants**

**V.**

**GARY W. GALLAGHER, DANIELLE KEOGH, BRENT R. CALDWELL, AND DIVERSIFIED MANAGEMENT SERVICES, LLC, INDIVIDUALLY AND AS TRUSTEES OF NSSI ACQUISITION TRUST; DANIEL WEBSTER KEOGH; NSSI ACQUISITION TRUST; AND NSSIDMS HOUSTON, LLC, Appellees**

---

**On Appeal from the Probate Court No. 3
Harris County, Texas
Trial Court Cause Nos. 442,656, 442,656-401, and 442,656-402**

---

# O P I N I O N

In three consolidated appeals from identical interlocutory judgments

rendered in three trial court cases, we conclude we have appellate jurisdiction over paragraphs 6 and 7 of the judgments under section 51.014(a)(4) of the Civil Practice and Remedies Code. We reverse the second sentence of paragraph 6 and paragraph 7 of the judgments, declare these parts of the judgments void for failure to fix the amount of security to be given, and order them dissolved. After concluding that the trial court erred in granting a motion to dissolve temporary injunction in the first sentence of paragraph 6 of the judgments, we reverse this sentence and render judgment denying the motion to dissolve. After determining that we lack appellate jurisdiction over paragraphs 3-5 of the judgments, we dismiss the fourth, fifth, sixth, and seventh issues for lack of jurisdiction. Because judicial efficiency does not militate against requiring the appellants to file a separate original proceeding, we do not treat the appellants' brief as a petition for writ of mandamus.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant Nuclear Sources and Services, Inc. (the "Company") is a closely held corporation founded by Robert Gallagher, the husband of Maurita Gallagher. The Company processes nuclear and other toxic waste chemicals. Before his death Robert owned 100% of the stock of the Company. Robert died on October 8, 2014, and the assets of his estate, including the Company stock, passed under the terms of his will to his surviving spouse Maurita.

Maurita died on August 25, 2015, and the stock of the Company became an asset of Maurita's estate. Robert's daughter, Shawn Gruss, qualified as Independent Executor of the Estate of Maurita Gallagher. Shawn asked her brother Gary W. Gallagher ("Gary"), son of Robert and a beneficiary of Maurita's Estate, to assist Shawn in handling the Company.

On August 16, 2016, Shawn as Independent Executor of the Estate of

2

Maurita Gallagher (the "Executor") and Gary as Member of the Board of Trustees of NSSI Acquisition Trust ("Acquisition Trust"), an entity created for the purpose of buying 100% of the outstanding common stock of the Company (the "Shares"), signed a Stock Purchase Agreement (the "Agreement") effective as of May 1, 2016. The Agreement provided terms and conditions for Acquisition Trust to purchase the Shares from the Executor. The Agreement was signed in the offices of Brent R. Caldwell, a lawyer who represented the Executor when the Agreement was drafted and signed. Caldwell was also a member of the Company's Board of Directors and a trustee of Acquisition Trust.

The Agreement provided that the aggregate purchase price for the Shares was $2,405,882.50 (the "Purchase Price"). It is undisputed that to date, Acquisition Trust has not paid the Executor any part of the Purchase Price. Various disputes arose relating to the Company, including a dispute between the Executor and Acquisition Trust as to the meaning of the Agreement's language and as to whether the Independent Executor or Acquisition Trust owns the Shares.

**The First Case**

In cause number 442,656 in Harris County Probate Court Number 3,[1] Plaintiffs Sandra Bentley, Timothy Meyers, and Christina Meyers, beneficiaries of the Estate (the "Bentley Parties"), each individually and derivatively on behalf of the Company filed claims against the Executor, Gary, Daniel Webster Keough (Gary's son-in-law), Danielle Keough (Gary's daughter), Caldwell, Diversified Management Services, LLC ("Diversified"), Acquisition Trust, and NSSIDMS Houston, LLC ("NSSIDMS"). In this case (the "First Case"), the Bentley Parties asserted the following claims: (1) a declaratory judgment action against all

---

[1] This cause number was assigned when the Executor filed an application to probate the will of Maurita Gallagher.

defendants seeking declarations that (a) the Agreement is void and unenforceable; (b) any purported sale of the Shares by the Executor without court approval is void; and (c) the Business Services Agreement, and Gary and Daniel's Executive Employment Agreements are void as a matter of law; (2) breach-of-fiduciary-duty claims against Gary, Daniel, Caldwell, and Gruss; (3) waste of corporate asset claims against Gary, Daniel, and Caldwell; (4) an action to rescind certain transactions against Gary, Daniel, and Caldwell; (5) fraud claims against Gary, Acquisition Trust, and Diversified, (6) conversion claims against all defendants, (7) purported unjust enrichment claims against all defendants, (8) a request for a constructive trust against Diversified and NSSIDMS, (9) a request for appointment of a receiver for the Company, and (10) a request for the appointment of an auditor. The Executor settled the Bentley Parties' claims against her, and the Bentley Parties assigned their claims against the other defendants to the Executor. In the First Case, the Executor also asserted a crossclaim against Caldwell, Gary, and Danielle as trustees of Acquisition Trust, seeking a declaration that the Estate of Maurita J. Gallagher (the "Estate") is the lawful owner of the Shares.

On August 13, 2019, the trial court signed a temporary injunction in the First Case enjoining Gary, Daniel, Danielle, Diversified, Acquisition Trust, and NSSIDMS from (1) holding themselves out as stockholders, officers, or directors of the Company, (2) taking any position contrary to the Company's current Board of Directors, (3) taking any action in furtherance of a sale of the Company's stock or assets, (4) making any withdrawals or authorizing any transfer of any funds from any bank or brokerage account of the Company, Diversified, or NSSIDMS, (5) taking any action as a shareholder of Acquisition Trust, and (6) engaging in any self-dealing transactions or transactions with interested parties under section 21.418 of the Texas Business Organizations Code. In this injunction, the trial court ordered the Company to suspend performance of all contracts with any of the

4

enjoined parties and ordered the enjoined parties not to take any action against the Company to enforce any purported contractual obligation of the Company without the trial court's permission.

## The Second Case

In Cause No. 442,656-401 (the "Second Case"), the Executor sued Diversified as Trustee of Acquisition Trust seeking (1) the following declaratory relief: (a) a declaration as to the rights of ownership in the Shares, (b) a declaration that the Estate owns the Shares, and (c) a declaration that the Estate is entitled to reasonable attorney's fees; and (2) the following injunctive relief: (a) an injunction that Diversified not assert any position contrary to the Company's Board of Directors; (b) an injunction that Diversified not make any withdrawals or authorize any transfers from any bank or brokerage account maintained by the Company or Diversified (to the extent the Company's funds are in such accounts); (c) an injunction that Diversified not engage in any transactions that constitute self-dealing or that otherwise represent transactions with interested parties under section 21.418 of the Texas Business Organizations Code; and (d) an injunction that Diversified not take any action in furtherance of a sale or potential sale of the Company to any buyer.

In the Second Case on August 13, 2019, the trial court signed a temporary injunction whose body contains the same text as the August 13, 2019 temporary injunction in the First Case. In this second August 13, 2019 temporary injunction, the trial court enjoins Gary, Daniel, Danielle, Acquisition Trust, and NSSIDMS even though none of them is a party in the Second Case.

## The Third Case

In Cause No. 442,656-402 (the "Third Case"), the Company sued Gary, Daniel, Caldwell, and Diversified asserting the following claims: (1) breach-of-fiduciary-duty claims against Gary, Daniel, and Caldwell; (2) money-had-and-

5

received claims against Gary, Daniel, and Diversified; (3) Theft Liability Act claims against Gary, Daniel, and Diversified; (4) conversion claims against Gary, Daniel, and Diversified; (5) a negligence claim against Caldwell; and (6) a declaratory-judgment action against all defendants seeking declarations that (a) Gary and Daniel's Executive Employment Agreements are each void as a matter of law; (b) the Business Services Agreement between the Company and Diversified is void as a matter of law; and (c) the website "nssienvironmental.com" belongs to the Company.

The trial court did not issue any temporary injunction in the Third Case. Although the Company sought declaratory relief, the Company did not seek a declaratory judgment as to the ownership of the Shares or as to the effect of the Agreement on the transfer of ownership of the Company's stock from the Estate to Acquisition Trust.

### The Trial Court's Separate Trial Order

The Executor filed an opposed motion to consolidate the three cases, along with two cases regarding the Estate of Robert Gallagher, into a single case. The Company joined the motion. In an order entitled "Order on Shawn Deane Gruss's First Amended Motion to Consolidate Joined by [the Company]," the trial court stated that this motion came on to be heard, and then proceeded to not rule on consolidation. Instead, the trial court stated that "by agreement between counsel, two (2) issues shall be tried to the bench." The trial court ordered that "the cause of action pled in [the First Case, the Second Case, and the Third Case] for a declaratory judgment as to the effect of the [Agreement] on the transfer of ownership of the [Shares] from the [Estate] to [Acquisition Trust] shall be tried to the bench on [a specified date]." The trial court also ordered that the claims in one of the cases regarding the Estate of Robert Gallagher "shall also be tried to the

6

bench if same is necessary."[2] Although the trial court stated in this order that there was a claim in the Third Case for declaratory relief regarding the Agreement, there never has been any claim for such relief in the Third Case. Although the trial court suggested that it was ruling on the Executor's motion to consolidate, the court never ruled on this motion, and the First Case, Second Case, and Third Case remain unconsolidated. Instead of granting consolidation, the trial court effectively determined that a declaratory-judgment claim allegedly pending in the three cases should be tried together in a bench trial separate from the trial of the remaining claims in each of the respective cases. So the substance of the order is a separate trial order rather than a consolidation order.

## A Bench Trial and A Judgment

The trial court conducted a two-day bench trial on the claims for declaratory relief allegedly pending in the three separate cases. After trial the court signed a judgment that was entered by the clerk in each of the three cases. In the judgments, the trial court stated in pertinent part:

- "The causes of action tried to the bench related only to [the Executor's] request for a declaratory judgment as to the effect of the [Agreement] on the transfer of ownership of the [Shares] from the Estate to [Acquisition Trust] in [the First Case, the Second Case, and the Third Case]."

- The trial court ordered "that pursuant to the terms of the [Agreement], the Closing commenced on August 16, 2016 ("Closing"), but has not been completed; accordingly, [Acquisition Trust] has sixty (60) days from the date of this Order to pay the Purchase Price of . . . ($2,405,882.50) to the Estate for the [Shares] as set forth in the [Agreement] between the [Estate] and [Acquisition Trust] entered into August 16, 2016 dated effective May 1, 2016 ("Purchase Price") to finalize the Closing."

- The trial court ordered "that upon timely delivery of the purchase price the

---

[2] Apparently trying the claims in this case was not necessary because the record reflects that the trial court did not try these claims along with the declaratory-judgment claims mentioned.

stock shall remain in the possession, ownership and control of [Acquisition Trust]; however, if the trustees of Acquisition Trust fail to pay the Purchase Price to the Estate by no later than sixty (60) days from the date of this Order, the [Agreement] is null and void and ownership of the [Shares] will vest with the Estate, which shall be declared the lawful owner of the [Shares]."

- The trial court also ordered "that in the event [Acquisition Trust] pays the Purchase Price to the Estate within sixty (60) days of this Order then all other terms of the [Agreement] shall remain in place, including but not limited to, [the Executor's] right within sixty (60) days after receipt of the Purchase Price to obtain a current Adjusted Valuation (i.e., "Fairness Opinion")."

- The trial court ordered that its "Temporary Injunction, dated August 13, 2019, is DISSOLVED."[3]

- The trial court further ordered "that the current books and records of [the Company] shall be made available to [Acquisition Trust] immediately and the parties shall cooperate to provide [Acquisition Trust] access to [the Company] at a mutually agreed date and time but no later than [within] two (2) weeks of the date of this judgment."

- The trial court ordered "that no expenditures or distributions shall be made by [the Company] other than in the ordinary course of business without prior approval of the Court."

The trial court did not rule on the parties' requests for attorney's fees but stated in the judgment that the parties could submit applications for attorney's fees as to the claims tried in the bench trial within 90 days of the date of the judgment.

The Executor and the Company (collectively the "Gruss Parties") timely perfected an interlocutory appeal from the identical judgments that the trial court rendered in each of the three cases (collectively the "Judgments"). In each judgment, the trial court ordered all remaining claims in each of the three cases to be tried to the bench on a specified date, but before that date, the trial court granted the Executor's motion to abate each of the three cases pending the disposition of

---

[3] Presumably the trial court meant to dissolve the temporary injunction it issued on that date in the First Case and the temporary injunction it issued on that date in the Second Case.

the interlocutory appeal in each case by the Executor and the Company.

The trial court set a supersedeas amount for the Judgments, and counsel for the Executor and the Company made a cash deposit in lieu of supersedeas bond in this amount. The trial court also issued findings of fact and conclusions of law.

## II. ISSUES AND ANALYSIS

**A.    Does this court have appellate jurisdiction to review the Judgments?**

The Gruss Parties assert in their second issue that the trial court erred in dissolving the August 13, 2019 temporary injunctions. In their third issue, the Gruss Parties contend that the trial court erred in issuing a new temporary injunction in the Judgments. In their fourth, fifth, sixth, and seventh issues the Gruss Parties challenge the merits of the relief the trial court granted in the Judgments regarding the Agreement and Acquisition Trust's ability to pay the Purchase Price and to own the Shares. In their first issue the Gruss Parties assert that this court has appellate jurisdiction to consider all issues presented in their appellate brief. The Gruss Parties brief various bases on which they assert this court has appellate jurisdiction.

Appellees Gary W. Gallagher, Daniel Webster Keogh, Danielle Keogh, Diversified Management Services, LLC, NSSI Acquisition Trust, and NSSIDMS Houston, LLC (collectively the "Gallagher Parties") have filed an appellate brief.[4] The Gallagher Parties assert that this court has appellate jurisdiction, although they do not brief this point or specify the basis on which they think this court has jurisdiction in this interlocutory appeal. We are obligated to review sua sponte issues affecting our appellate jurisdiction. *See M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004). Thus, we first address whether and to what extent

---

[4] Caldwell represents himself on appeal and has not filed a brief.

this court has appellate jurisdiction in these appeals.

**1. Are the Judgments final judgments appealable under section 51.012 of the Civil Practice and Remedies Code?**

In civil cases in which the judgment or amount in controversy exceeds $250, exclusive of interest and costs, a person may take an appeal to the court of appeals from a final judgment of a district or county court. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.012 (West, Westlaw through 2021 R.S.). Under the general rule for determining finality, an order issued without a conventional trial on the merits is final for purposes of appeal if it (1) actually disposes of all claims and all parties before the court or (2) states with unmistakable clarity that it is a final judgment. *See Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 192, 200 (Tex. 2001). In each of the Judgments, the trial court did not actually dispose of all claims and all parties before the court, nor did the trial court state with unmistakable clarity that the judgment is a final judgment.[5] *See id*. The trial court did not grant a severance to make any of the Judgments final. Under the general rule for determining finality, each of the judgments is interlocutory and not appealable under section 51.012 of the Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.012; *Lehmann*, 39 S.W.3d at 192, 200. The Gruss Parties and the Gallagher Parties agree that this is so.

**2. Are the Judgments final orders under section 32.001(c) of the Estates Code?**

An exception to the general rule for determining finality applies in probate cases because orders resolving certain discrete matters in probate cases may be final for purposes of appeal even though these orders do not dispose of all pending parties and claims. *See* Tex. Est. Code § 32.001(c) (West, Westlaw through 2021

---

[5] Indeed, the trial court acknowledged that the Judgments were not final since it abated all remaining claims pending this appeal.

R.S.) ("A final order issued by a probate court is appealable to the court of appeals"); *Lehmann*, 39 S.W.3d at 195; *Crowson v. Wakeham*, 897 S.W.2d 779, 781–83 (Tex. 1995); *Clark v. Clark*, 638 S.W.3d 829, 835 (Tex. App.—Houston [14th Dist.] 2021, no pet.). To determine whether the probate order is final on this basis, we first consider whether there is a statute specifically declaring this type of order to be the end of a particular phase of proceedings under the Estates Code. *See De Ayala v. Mackie*, 193 S.W.3d 575, 578–79 (Tex. 2006); *Crowson*, 897 S.W.2d at 781–83. If there is such a statute, then that statute controls; if not, the order is final if, in the order, the probate court disposed of all parties and all issues in a particular phase of the probate proceedings of which the order logically may be considered a part. *See De Ayala*, 193 S.W.3d at 578–79; *Crowson*, 897 S.W.2d at 781–83; *Clark*, 638 S.W.3d at 835. Probate proceedings are an exception to the "one final judgment" rule. *Lehman*, 39 S.W.3d at 192. Not every interlocutory order in a probate case, however, is appealable. *See De Ayala*, 193 S.W.3d at 578.

There is no statute specifically declaring orders like the Judgments to be the end of a particular phase of proceedings under the Estates Code. Thus, to determine whether the Judgments are final and appealable under the probate exception to the general rule for determining finality, we must determine (1) if there is a particular phase of the probate proceedings of which the Judgments logically may be considered a part, and (2) if, in the Judgments, the probate court disposed of all parties and all issues in this phase. *See id*. at 578–79; *Crowson*, 897 S.W.2d at 781–83; *Clark*, 638 S.W.3d at 836. To make this determination, we examine the live pleadings contained in the record.

In each judgment, the trial court granted certain declaratory relief, and did not dispose of the remaining claims. The adjudicated claims for declaratory relief are not themselves a particular phase of the probate proceedings; rather, they are

11

some of the claims asserted in the cases below. In none of the Judgments did the trial court dispose of all parties and all issues in a particular phase of the probate proceedings. *See De Ayala*, 193 S.W.3d at 578–79 (holding that an order refusing to remove an executor did not dispose of all parties and all issues in a particular phase of the probate proceedings); *Crowson*, 897 S.W.2d at 781–83 (holding that interlocutory summary judgment that Crowson was not the common law wife of the decedent was interlocutory, even though it adjudicated all of Crowson's heirship claims, because the judgment did not adjudicate all of the other parties' heirship claims); *In re Estate of Pustka*, No. 14-18-00166-CV, 2018 WL 2926202, at *2–3 (Tex. App.—Houston [14th Dist.] Jun. 12, 2018, no pet.) (holding that the trial court's partial-summary-judgment order logically should be considered as part of the phase of the probate proceeding in which appellant requested to be appointed guardian and sought the removal of the current guardian and that order ruling on the former request but not the latter was interlocutory) (mem. op.); *Asafi v. Rauscher*, No. 14-09-00800-CV, 2009 WL 4346067, at *1–2 (Tex. App.—Houston [14th Dist.] Dec. 3, 2009, pet. denied) (holding that the probate court's partial-summary-judgment orders were interlocutory and did not dispose of all parties and all issues in a particular phase of the probate proceedings because the orders related to claims and issues that remained pending before the probate court) (mem. op.). None of the Judgments is a final order under the probate exception to the general rule for determining finality. *See De Ayala*, 193 S.W.3d at 578–79; *Crowson*, 897 S.W.2d at 781–83; *In re Estate of Pustka*, 2018 WL 2926202, at *2–3; *Asafi v. Rauscher*, 2009 WL 4346067, at *1–2.

The Gruss Parties cite *Estate of Wright* for the proposition that a probate court's "order is appealable if it finally adjudicates some substantial right." 676 S.W.2d 161, 163 (Tex. App.—Corpus Christi 1984, writ ref'd n.r.e.). The Supreme

Court of Texas has determined that the "substantial right" legal standard is no longer the correct legal standard for determining the appealability of a probate court order in this context. *See De Ayala*, 193 S.W.3d at 578–79; *Clark*, 638 S.W.3d at 835. The Gruss Parties also cite *Christensen v. Harkins*, a case that is also not on point because it did not apply the current legal standard. *See* 740 S.W.2d 69, 72–74 (Tex. App.—Fort Worth 1987, no writ) (op. on mot.). The Gruss Parties cite *Chase Manhattan Bank v. Bowles*. *See* 52 S.W.3d 871, 878 (Tex. App.—Waco 2001, no pet.). But the court in that case applied a legal standard based on the "substantial right" test rather than the current legal standard based on the "particular phase of the probate proceedings." *See id*. The Gruss Parties rely on *Estate of Durrill*, a case in which the Thirteenth Court of Appeals stated the current legal standard, cited *Estate of Wright* for the "substantial right" legal standard, and concluded that the probate court's judgment was appealable because the judgment met "the tests in *Crowson* and in *Lehman* that '[a] judgment that finally disposes of all remaining parties and claims, based on the record in the case, is final.'" 570 S.W.3d 945, 956–57 (Tex. App.—Corpus Christi 2019, no pet.). The *Estate of Durrill* case is not on point. *See id*. The Gruss Parties cite *Gordon v. Gordon*, in which the court of appeals recited the correct legal standard and concluded the court had appellate jurisdiction, without identifying the particular phase of the probate proceedings involved in the case. *See* No. 11-14-00086-CV, 2016 WL 1274076, at *2 (Tex. App.—Eastland Mar. 31, 2016, pet. denied) (mem. op.). In its summary judgment, the probate court in *Gordon* held that the clause at issue was testamentary, that Patrick and Beverly did not by the joint will revoke the trust, and that the trust assets were not a part of Patrick's estate. *See id*. Thus, the *Gordon* court appears to have concluded that the particular phase of the probate proceedings was the determination as to whether the trust assets were assets of Patrick's estate and that the trial court's summary judgment disposed of all parties

and all issues in that particular phase. *See id*. The facts of *Gordon* are materially different from the facts in today's case. *See id*.

Under the applicable legal standard from the Supreme Court of Texas, we conclude that we do not have appellate jurisdiction under section 32.001(c) and the probate exception to the general rule for determining finality. *See* Tex. Est. Code § 32.001(c); *De Ayala*, 193 S.W.3d at 578–79; *Crowson*, 897 S.W.2d at 781–83; *In re Estate of Pustka*, 2018 WL 2926202, at *2–3; *Asafi v. Rauscher*, 2009 WL 4346067, at *1–2.

> **3.    Are parts of the Judgments subject to an interlocutory appeal because they grant a temporary injunction?**

Because the Judgments are interlocutory, they are not appealable unless explicitly made so by statute. *Stary v. DeBord*, 967 S.W.2d 352, 352–53 (Tex. 1998). The Gruss Parties assert that in parts of the Judgments the trial court granted a temporary injunction, and thus this court has interlocutory appellate jurisdiction under section 51.014(a)(4) of the Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (West, Westlaw through 2021 R.S.). This statute provides that "a person may appeal from an interlocutory order of a . . . statutory probate court . . . that . . . grants or refuses a temporary injunction." *See id*. But, an appellant may not use an appeal under this statute as a vehicle for obtaining an interlocutory appeal of other rulings not subject to an interlocutory appeal that are made in the order in which the trial court granted or refused a temporary injunction. *See Clark*, 638 S.W.3d at 837. To the extent the trial court granted a temporary injunction as well as non-injunctive relief that is not subject to an interlocutory appeal, this statute provides for an interlocutory appeal only from the part of the order in which the trial court granted the temporary injunction. *See Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co.*, 540 S.W.3d 577, 587–88 (Tex. 2018); *Clark*, 638 S.W.3d at 837. This court bases its

determination as to whether the trial court granted or refused a temporary injunction in an order on the substance, character, and function of the order, not on its form or title. *See Del Valle ISD v. Lopez*, 845 S.W.2d 808, 809 (Tex. 1992); *Clark*, 638 S.W.3d at 838.

The Gruss Parties argue that Paragraphs 3-7 of the Judgments require the parties to take certain actions and therefore the substance of these paragraphs is a temporary injunction. *See Clark*, 638 S.W.3d at 838. In paragraphs 3, 4, and 5, the trial court interprets the Agreement and allows the parties to take actions if they wish, but the court does not command or prohibit any conduct. *See id*. The trial court does not require Acquisition Trust to either pay or not pay the Purchase Price. *See id*. In the first sentence of paragraph 6, the trial court dissolves temporary injunctions but does not command or prohibit any conduct.[6] *See id*. Under the plain text of the Judgments and considering the Judgments' substance, character, and function, we conclude that paragraphs 3 through 5 and the first sentence of paragraph 6 of the Judgments do not grant a temporary injunction and are not subject to an interlocutory appeal under this part of section 51.014(a)(4) of the Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4); *Clark*, 638 S.W.3d at 838.

However, in the second sentence of paragraph 6 of the Judgments, the trial court orders that the current books and records of the Company shall be made available to Acquisition Trust immediately and that the parties cooperate to provide Acquisition Trust access to the Company at a mutually agreed date and time but no later than two weeks after the date of the Judgments. In this sentence, the trial court commands the parties, including the Company, to engage in certain

---

[6] In the next subsection, we discuss the appealability of this sentence under another part of section 51,014(a)(4) of the Civil Practice and Remedies Code.

conduct. *See Clark*, 638 S.W.3d at 838. In paragraph 7, the trial court orders that no expenditures or distributions shall be made by the Company other than in the ordinary course of business without prior approval of the trial court. In this paragraph the trial court prohibits the Company from engaging in certain conduct. *See id*.

The Gallagher Parties assert that these parts of the Judgments are not a new injunction because they represent no change from an agreed temporary injunction issued in the First Case on June 24, 2019.[7] In the prior agreed injunction, the trial court enjoins the Executor and any agents, servants, employees, and representatives, as well as all those acting in concert with her from (1) making any withdrawals or authorizing any transfers from any bank or brokerage account maintained by the Company or Diversified, except as is necessary in the ordinary course of business to pay trade payables to disinterested and independent vendors and payroll expenses of disinterested employees, except that the Executor may be paid a $600 per week salary from the Company; (2) engaging in any transaction that constitutes self-dealing or that otherwise represents transactions with interested parties under Texas Business Organizations Code section 21.418; and (3) taking any action in furtherance of a sale or potential sale of the Company to any buyer, except as may be approved by the trial court, with the exception of exchange of due diligence materials with Republic Services. This prior injunction does not order that the Company's current books and records be made available to any party. Though the first provision of the prior injunction regarding withdrawals and transfers from any bank or brokerage account maintained by the Company has some similarity to paragraph 7 of the Injunctions, there are material differences. In addition, in the prior injunction, the trial court enjoined only the Executor and any

---

[7] The trial court did not issue this prior injunction in the Second Case or in the Third Case.

agents, servants, employees, and representatives, as well as all those acting in concert with her. In paragraph 7 of the Judgments, the trial court enjoins the Company. We conclude that the second sentence of paragraph 6 and paragraph 7 of the Judgments are different from the prior injunction in the First Case and do not serve to maintain or carry forward the prior injunction.[8] Instead, under the plain text of the Judgments and considering the Judgments' substance, character, and function, we conclude that the second sentence of paragraph 6 and paragraph 7 of the Judgments grant a new temporary injunction and are subject to an interlocutory appeal under section 51.014(a)(4) of the Civil Practice and Remedies Code as an interlocutory order that grants a temporary injunction, whereas the other parts of the Judgments are not subject to an interlocutory appeal under this part of section 51.014(a)(4). *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4); *Qwest Communications Corp. v. AT & T Corp.*, 24 S.W.3d 334, 337–38 (Tex. 2000); *Clark*, 638 S.W.3d at 838.

4. **Is the first sentence of paragraph 6 of the Judgments subject to an interlocutory appeal because in it the trial court grants a motion to dissolve a temporary injunction?**

The Gruss Parties also rely on the part of section 51.014(a)(4) of the Civil Practice and Remedies Code in which the Legislature provides that "a person may appeal from an interlocutory order of a . . . statutory probate court . . . that . . . grants . . . a motion to dissolve a temporary injunction as provided by Chapter 65." *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4). After the bench trial, Acquisition Trust moved to dissolve the trial court's temporary injunction dated August 13, 2019. Under the plain text of the Judgments and considering the Judgments' substance, character, and function, we conclude that in the first

---

[8] To the extent that this prior injunction has not been dissolved or set aside, the injunction continues to be in effect in the First Case.

sentence of paragraph 6 the trial court effectively granted this motion to dissolve these temporary injunctions. Thus, this court has jurisdiction over the Gruss Parties' interlocutory appeal from the first sentence of paragraph 6 of the Judgments under this part of section 51.014(a)(4) of the Civil Practice and Remedies Code. *See id.*; *Murphy v. McDaniel*, 20 S.W.3d 873, 877 (Tex. App.— Dallas 2000, no pet.).

> **5.** **Does the trial court's granting of a temporary injunction in part of the Judgments or its granting of a motion to dissolve a temporary injunction in another part of the Judgments mean that all parts of the Judgments are subject to an interlocutory appeal under section 51.014(a)(4) of the Civil Practice and Remedies Code?**

The Gruss Parties assert that because they may pursue an interlocutory appeal of the parts of the Judgments in which the trial court granted a temporary injunction and the part of the Judgments in which the trial court granted a motion to dissolve a temporary injunction, they may appeal every part of the Judgments under section 51.014(a)(4) of the Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4). The cases the Gruss Parties cite for this proposition apply subsection (a)(6) of section 51.014 of the Civil Practice and Remedies Code, rather than subsection (a)(4). *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(6) (West, Westlaw through 2021 R.S.); *Dallas Symphony Ass'n, Inc. v. Reyes*, 571 S.W.3d 753, 760 (Tex. 2019); *Delta Airlines, Inc. v. Norris*, 949 S.W.2d 422, 429 (Tex. App.—Waco 1997, writ denied). The language of subsection (a)(6) is materially different from that of subsection (a)(4). *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(6) (stating that "[a] person may appeal from an interlocutory order of a district court, county court at law, statutory probate court, or county court that . . . denies a motion for summary judgment *that is based in whole or in part* upon a claim against or defense by a member of the

18

electronic or print media, acting in such capacity, or a person whose communication appears in or is published by the electronic or print media, arising under the free speech or free press clause of the First Amendment to the United States Constitution, or Article I, Section 8, of the Texas Constitution, or Chapter 73") (emphasis added). Thus, the cases the Gruss Parties cite are not on point. In addition, under binding precedent, an appeal under section 51.014(a)(4) of the Civil Practice and Remedies Code of the parts of an order or judgment in which the trial court grants or refuses a temporary injunction or grants or denies a motion to dissolve a temporary injunction does not give this court interlocutory appellate jurisdiction over other parts of the order or judgment. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4); *Alexander Dubose Jefferson & Townsend LLP*, 540 S.W.3d at 587 (stating that portions of an order can be injunctive in nature and appealable, while other provisions of the same order can be interlocutory and unreviewable because they do not resemble injunctive relief); *Clark*, 638 S.W.3d at 837 (holding that "[t]o the extent the trial court grants a temporary injunction as well as non-injunctive relief that is not appealable, [section 51.014(a)(4)] provides for an interlocutory appeal only from the part of the order granting the temporary injunction"). Thus, we reject the Gruss Parties' argument that the appealability of the trial court's granting of a temporary injunction and dissolving of a prior temporary injunction makes every ruling in the Judgments subject to an interlocutory appeal under section 51.014(a)(4). *See Alexander Dubose Jefferson & Townsend LLP*, 540 S.W.3d at 587–88; *Clark*, 638 S.W.3d at 837.

**6. Does this court have appellate jurisdiction over the non-appealable parts of the Judgments based on *State v. Cook United, Inc.*?**

In the event that this court determines that it has appellate jurisdiction over paragraphs 6 and 7 of the Judgments, the Gruss Parties assert that this court has

19

jurisdiction over paragraphs 3-5 of the Judgments based on "pendent" interlocutory appellate jurisdiction under *State v. Cook United, Inc.*, 464 S.W.2d 105, 106 (Tex. 1971).[9] The Gruss Parties cite *Cook United* for the proposition that an order of the trial court not subject to interlocutory appeal may be attacked in an interlocutory appeal from the trial court's temporary injunction in so far as the questions raised as to the order affect the validity of the temporary injunction.[10] *See State v. Cook United, Inc.*, 464 S.W.2d 105, 106 (Tex. 1971). The Gruss Parties assert that because the trial court based its rulings in paragraphs 6 and 7 on the trial court's interpretation of the Agreement and determination of the parties' rights in paragraphs 3-5, the issues they raise as to paragraphs 3-5 affect the validity of paragraphs 6 and 7, and therefore, this court has "pendent" interlocutory appellate jurisdiction to address their issues as to paragraphs 3-5.

In *Cook United*, in an interlocutory appeal from a temporary injunction, the defendants asserted two points of error in the court of civil appeals: (1) that the trial court erred in overruling their pleas in abatement, and (2) that the trial court erred in failing to state its reasons in the temporary-injunction order. *See id*. The court of civil appeals sustained both points and reversed the trial court's

---

[9] The Gruss Parties also rely on a 2000 unpublished opinion of this court, *Santos Ltd. v. Gibson*, No. 14-00-00151-CV, 2000 WL 1588095 (Tex. App.—Houston [14th Dist.] Oct. 26, 2000, no pet.)(not designated for publication). But, because it is an unpublished opinion issued before January 1, 2003, this opinion has no precedential value. *See* Tex. R. App. P. 47.7(b) & 2008 cmt.; *Stearns v. Martens*, 476 S.W.3d 541, 548 n.5 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Office of Att'y Gen'l v. Long*, 401 S.W.3d 911, 915, n.2 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

[10] Federal appellate courts apply pendent interlocutory appellate jurisdiction in rare circumstances. *See Noble Capital Fund Management, L.L.C. v. U.S. Capital Global Investment Management, L.L.C.*, 31 F.4th 333, 336–37 (5th Cir. 2022). The Gruss Parties have not cited and research has not revealed any Texas precedent in which a court expressly addresses whether to apply this doctrine. Instead, the Gruss Parties effectively assert that the *Cook United* opinion applies pendent interlocutory appellate jurisdiction, though the court in that case does not expressly mention that doctrine. *See Cook United, Inc.*, 464 S.W.2d at 106–07.

temporary-injunction order. *See id*. The Supreme Court of Texas stated that the trial court's order overruling the plea in abatement was an interlocutory order from which no appeal is provided. *See id*. The high court stated that this order "may be attacked in the appeal from the temporary injunction only in so far as the questions raised affect the validity of the injunction order." *Id*. The *Cook United* court said nothing further regarding the respondents' challenges to the plea in abatement order. *See id*. at 106–07. The court did not address whether these challenges affected the validity of the injunction order or whether the court had interlocutory appellate jurisdiction over these challenges. *See id*. The supreme court proceeded to address the challenge to the temporary-injunction order, concluded that this challenge lacked merit, reversed the court of civil appeals's judgment, and affirmed the trial court's temporary-injunction order. *See id*. To the extent the sentence quoted above is a legal rule, the high court did not explain or apply this rule. *See id*. The only authority that the court cited in support of this sentence is *Texas State Board of Examiners in Optometry v. Carp*, 343 S.W.2d 242 (Tex. 1961).

In *Carp*, in an interlocutory appeal from a temporary injunction, the defendant asserted: (1) that the trial court erred in overruling its plea to the jurisdiction and its motion for severance, and (2) that the trial court erred in granting the temporary injunction. *See id*. at 243. The Supreme Court of Texas noted that the trial court's orders overruling the motion for severance and plea to the jurisdiction were interlocutory, and that no statute provided for an appeal therefrom. *See id*. The high court stated that these orders "cannot be attacked in an appeal from another interlocutory order which is appealable except in so far as the questions raised might affect the validity of the latter order." *Id*. The *Carp* court said nothing further regarding the petitioner's challenges to the orders overruling

21

the motion for severance and plea to the jurisdiction. *See id*. at 243–47. The court did not address whether these challenges affected the validity of the injunction order or whether the court had interlocutory appellate jurisdiction over these challenges. *See id*. The supreme court proceeded to address the challenge to the temporary-injunction order, concluded that this challenge had merit, reversed the court of civil appeals's judgment, and dissolved the trial court's temporary-injunction order. *See id*. To the extent the sentence quoted above from *Carp* is a legal rule, the high court did not explain or apply this rule. *See id*. The only authority that the court cited in support of this sentence are these two cases: *Zanes v. Mercantile Bank & Trust Co.*, 49 S.W.2d 922 (Tex. Civ. App.—Dallas 1932, writ ref'd) and *Witt v. Witt*, 205 S.W.2d 612 (Tex. Civ. App.—Fort Worth 1947, no writ). *See Carp*, 343 S.W.2d at 243.

In *Zanes* the Supreme Court of Texas did not say that interlocutory orders not subject to interlocutory appeal may be attacked in an appeal from an appealable interlocutory order if the questions raised about the former affect or might affect the validity of the latter. *See Zanes v. Mercantile Bank & Trust Co.*, 49 S.W.2d 922 (Tex. Civ. App.—Dallas 1932, writ ref'd). Instead, the high court ruled that in an interlocutory appeal from the trial court's order granting a temporary injunction and appointing a receiver, it was proper for the high court to refuse to address appellants' challenges to the trial court's order on a plea of misjoinder and a plea in abatement. *See id*. at 929. Although the appellants argued that the court should consider these challenges because the pleas related to appellee's right to a temporary injunction, the high court stated that no statute provided for an interlocutory appeal from an order on a plea of misjoinder or on a plea in abatement and that the court should not review these rulings on an interlocutory appeal from an order appointing a receiver and granting a temporary injunction

22

"unless a reasonable necessity should exist therefor." *Id*. The Supreme Court of Texas concluded that to adjudicate the appeal from the temporary-injunction and receivership order, it was not necessary to address the challenges to the orders on the pleas of misjoinder and abatement. *See id*. Thus, *Zanes* does not support the proposition stated by the *Carp* court; instead, *Zanes* says that interlocutory orders not subject to interlocutory appeal may be attacked in an appeal from an appealable interlocutory order only if the questions raised about the former are reasonably necessary to adjudicate the appeal of the latter. *See id*.

In *Witte v. Witte*, appellant sought to appeal from the parts of the trial court's order that granted a temporary injunction, as well as the parts that overruled a plea to the jurisdiction and a plea in abatement. *See Witt v. Witt*, 205 S.W.2d 612, 615 (Tex. Civ. App.—Fort Worth 1947, no writ). The court of civil appeals cited *Zanes* for the following proposition: "We know of no rule of law which would authorize the tacking of interlocutory orders from which no appeal lies to those in the same case from which an appeal will lie, and thus authorize the appellate court to review orders from which no appeal lies." *Id*. The *Witte* court dismissed the appeal to the extent appellant sought to appeal from the parts of the order that did not grant a temporary injunction. *See id*. Thus, *Witte* does not support the proposition stated by the *Carp* court. *See id*. Likewise, the Supreme Court of Texas has cited its opinion in *Zanes* for the proposition that the high court could not address the petitioners' challenge to an order overruling their plea in abatement because that order was a non-appealable interlocutory order, even though it accompanied an appealable temporary-injunction order. *See Hastings Oil Co. v. Texas Co.*, 234 S.W.2d 389, 398 (Tex. 1950).

Thus, the *Cook United* line of cases is based on *Zanes*, which at most stands for the proposition that interlocutory orders not subject to interlocutory appeal may

23

be attacked in an appeal from an appealable interlocutory order only if the questions raised about the former are reasonably necessary to adjudicate the appeal of the latter. *See id*. As shown below, we need not address the Gruss Parties' challenges to paragraphs 3-5 to reverse paragraphs 6 and 7 of the Judgments. We conclude that no reasonable necessity exists to address the Gruss Parties' challenges to paragraphs 3-5. *See Zanes*, 49 S.W.2d at 929. Thus, the Gruss Parties' argument as to "pendent" interlocutory appellate jurisdiction does not show that this court has interlocutory appellate jurisdiction to review paragraphs 3-5 of the Judgments.

As discussed above, this court has jurisdiction over the Gruss Parties' interlocutory appeal from paragraphs 6 and 7 of the Judgments under section 51.014(a)(4) of the Civil Practice and Remedies Code. None of the bases for appellate jurisdiction asserted by the Gruss Parties provides this court with interlocutory appellate jurisdiction over paragraphs 3-5 of the Judgments. We conclude that this court lacks appellate jurisdiction over these paragraphs, and therefore we dismiss the fourth, fifth, sixth, and seventh issues for lack of appellate jurisdiction.[11]

**B.    Should this court dismiss the appeal in cause number 14-21-00180-CV for the reasons stated by the Gallagher Parties?**

The Gallagher Parties assert that this court should dismiss the appeal in cause number 14-21-00180-CV because no party in the Third Case sought a declaratory judgment as to the effect of the Agreement on the transfer of ownership of the Company's stock from the Estate to Acquisition Trust. Though it is true that no party sought this relief in the Third Case, the trial court signed an order in

---

[11] In their first issue, the Gruss Parties assert that this court has appellate jurisdiction to consider all issues presented in their appellate brief. This issue assigns no error by the trial court. In any event, we conclude that this court has appellate jurisdiction to review paragraphs 6 and 7 of the Judgments, but not the remainder of the Judgments.

24

which the trial court ordered that "the cause of action pled in [the First Case, the Second Case, **and the Third Case**] for a declaratory judgment as to the effect of the [Agreement] on the transfer of ownership of the [Shares] from the [Estate] to [Acquisition Trust] shall be tried to the bench on [a specified date]" (emphasis added). The reporter's record reflects that the trial court held this bench trial in all three cases, and the clerk's record reflects that the trial court rendered judgment in each of the three cases. We conclude that the Gallagher Parties have not shown that they are entitled to a dismissal of cause number 14-21-00180-CV on the basis that they assert.

## C. Should this court strike the Company as an appellant?

Although the Company timely perfected appeal, the Gallagher Parties contend that, the Company is not a proper appellant in these appeals. The Gallagher Parties ask this court to strike the Company as an appellant. In support of this request, the Gallagher Parties assert that the trial court did not impose any new injunction or modify any existing injunction affecting any conduct or claim by the Company that might be subject to review at this time. We concluded in section II.A.3. above that the second sentence of paragraph 6 and paragraph 7 of the Judgments do impose a new injunction. This new injunction affects the Company's conduct because the trial court orders that (1) the Company's current books and records be made available to Acquisition Trust, (2) the parties cooperate to provide Acquisition Trust access to the Company, and (3) no expenditures or distributions be made by the Company other than in the ordinary course of business without prior approval of the trial court. The Company timely appealed from this new temporary injunction, and this court has appellate jurisdiction to review this relief under section 51.014(a)(4) of the Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4); *Qwest Communications Corp.*, 24 S.W.3d

25

at 337–38; *Clark*, 638 S.W.3d at 838.

The Gallagher Parties also assert that no claim by the Company was tried and that the trial concerned a declaration of the rights of the parties to the Agreement, but the Company is not a party to the Agreement. We have already determined that this court lacks appellate jurisdiction over paragraphs 3-5 of the Judgments, in which the trial court addressed the rights of the parties to the Agreement.

We conclude that the Company is a proper appellant in these appeals, and therefore we deny the Gallagher Parties' request that we strike the Company as an appellant.

## D. Should this court declare the parts of the Judgment granting a temporary injunction void?

As discussed above, the second sentence of paragraph 6 and paragraph 7 of the Judgments grant a temporary injunction and are subject to an interlocutory appeal under section 51.014(a)(4) of the Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4). The Texas Rules of Civil Procedure require that an order granting a temporary injunction fix the amount of security to be given by the applicant. *See* Tex. R. Civ. P. 684. This procedural requirement is mandatory, and an order granting a temporary injunction that does not meet this requirement is subject to being declared void and dissolved. *See Qwest Communications Corp.*, 24 S.W.3d at 337; *McCurry v. Smith*, No. 14-10-00722-CV, 2011 WL 824882, at *1 (Tex. App.—Houston [14th Dist.] Mar. 10, 2011, no pet.) (mem. op.). At no place in the Judgments does the trial court fix the amount of security to be given as to either of these temporary injunctions. Thus, we reverse the second sentence of paragraph 6 and paragraph 7 of the Judgments, declare these parts of the Judgments void, and order them dissolved. We sustain the third issue to the extent the Gruss Parties challenge the second sentence of

paragraph 6 or paragraph 7 of the Judgments. To the extent the Gruss Parties challenge any other party of the Judgments, we dismiss the third issue for lack of appellate jurisdiction.

**E.  Did the trial court err in granting the motion to dissolve the prior temporary injunctions?**

In their second issue, the Gruss Parties assert that the trial court erred in granting the motion to dissolve the temporary injunctions issued on August 13, 2019, in the First Case and in the Second Case. Deciding whether to dissolve a temporary injunction is a matter that falls within the broad discretion of the trial court. *See De Los Salmones v. Anchor Development Group, LLC*, No. 14-20-00720-CV, 2022 WL 1218541, at *3 (Tex. App.—Houston [14th Dist.] Apr. 26, 2022, no pet.) (mem. op.). This interlocutory appeal is from an order granting a motion to dissolve the temporary injunctions; this appeal is not from the temporary injunctions issued by the trial court on August 13, 2019. Thus, we do not have jurisdiction to consider the propriety of the trial court's decision to grant the temporary injunctions. *See id*.; *Cellular Marketing, Inc. v. Houston Cellular Telephone Co.*, 784 S.W.2d 734, 735 (Tex. App.—Houston [14th Dist.] 1990, no writ). We presume that the temporary injunctions were not improvidently granted and that the record supported the trial court's action in granting the temporary injunctions. *See De Los Salmones*, 2022 WL 1218541, at *3; *Cellular Marketing, Inc.*, 784 S.W.2d at 735. Our review of the trial court's order dissolving the temporary injunctions is limited to the narrow question of whether that action by the trial court constitutes a clear abuse of discretion. *See De Los Salmones*, 2022 WL 1218541, at *3.

The purpose of a motion to dissolve a temporary injunction is not to give a party the opportunity to relitigate the propriety of the temporary-injunction order. *Id*. at *4. The trial court has the authority to dissolve a temporary injunction upon a

showing of changed circumstances. *Id*. Changed circumstances are conditions that alter the status quo existing after the temporary injunction was granted that make the injunction unnecessary or improper. *Id*. Changed circumstances may include an agreement of the parties, newly revealed facts, or a change in the law that make the temporary injunction unnecessary or improper. *Id*. The movant bears the burden to present new evidence establishing changed circumstances. *Id*. If the movant fails to present new evidence showing fundamental error or changed circumstances, then the trial court abused its discretion in granting the motion to dissolve. *Id*.; *Murphy*, 20 S.W.3d at 878–79 & n.4.

The only changed circumstances asserted by the Gallagher Parties are the trial court's rulings on the merits of two declaratory judgment claims and granting declaratory relief in the Judgments. The only legitimate purpose of a temporary injunction is to preserve the status quo pending trial, and the most expeditious relief from an unfavorable preliminary order dissolving an injunction is a prompt trial on the merits. *See Murphy*, 20 S.W.3d at 877. An interlocutory appeal should not be used to obtain an advance ruling on the issues. *See id.*

The Gruss Parties argue that the trial court's rulings on the merits of the declaratory judgment claims are not changed circumstances authorizing dissolution of the trial court's otherwise properly granted temporary injunction. *See id*. at 878–79. Changed circumstances may include an agreement of the parties, newly revealed facts, or a change in the law that make the temporary injunction unnecessary or improper. *See id.* Here, the changed circumstances alleged by the Gallagher Parties were not newly revealed facts or a change in the law; rather, the "change" was merely an interlocutory judicial determination of the merits of the declaratory judgment claims. In the Judgments the trial court did not address the remaining claims in the three cases, and the trial court did not order any severance

28

of any claims. We conclude that the trial court's interlocutory rulings on the merits of the declaratory-judgment claims are not changed circumstances authorizing dissolution of the trial court's temporary injunctions. *See id*. The motion to dissolve was not based on fundamental error. Thus, the trial court clearly abused its discretion in granting the motion to dissolve the August 13, 2019 temporary injunctions. *See id*. In the Third Case, there was no "Temporary Injunction, dated August 13, 2019." Therefore, the trial court clearly abused its discretion in granting the motion to dissolve temporary injunction in the Third Case. We sustain the Gruss Parties' second issue, reverse this part of the Judgments, and render judgment denying the motion to dissolve, and reinstating the temporary injunctions.

**F.      Should this court treat the Gruss Parties' appellate brief as a petition for writ of mandamus?**

In the alternative, if this court determines, as it has, that the court lacks appellate jurisdiction to consider one or more of the issues in the Gruss Parties' brief, then the Gruss Parties ask this court to treat these parts of their appellate brief as a mandamus petition and grant the Gruss Parties mandamus relief. *See CMH Homes v. Perez*, 340 S.W.3d 444, 452-54 (Tex. 2011). In the *CMH Homes* case, the supreme court instructed the court of appeals to consider the appeal as a petition for mandamus because (1) the appellant specifically requested the court of appeals to treat its appeal as a mandamus petition, (2) the appellant preserved this issue in the high court, and (3) judicial efficiency militated against requiring the appellant to file a separate original proceeding since doing so would waste the parties' time and judicial resources by requiring the appellant to file a separate document with the title "petition for writ of mandamus" listed on the cover. *See id*. at 453–54.

In the section of their brief in which they ask this court to treat parts of their appellate brief as a mandamus petition, the Gruss Parties state in a conclusory manner that "the requirements for mandamus relief are satisfied." They then assert that "[f]or the reasons stated in sections II–VI, the trial court abused its discretion in signing the Judgment." But, in sections II–VI of their brief, the Gruss Parties present various arguments as to why the trial court reversibly erred and why this court should reverse the Judgments on appeal. To establish their entitlement to mandamus relief as to the Judgments, the Gruss Parties must show, among other things, that the trial court clearly abused its discretion by signing the Judgments. *See In re Akin Gump Strauss Hauer & Feld, LLP*, 252 S.W.3d 480, 488 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding). Yet, in the referenced sections II–VI, the Gruss Parties do not argue that the trial court clearly abused its discretion or that they are entitled to mandamus relief. In these sections, the Gruss Parties do not cite mandamus cases. In the section of their brief in which they ask this court to treat parts of their appellate brief as a mandamus petition, the Gruss Parties do not brief an argument that the trial court clearly abused its discretion in signing the Judgments. The Gruss Parties' appellate brief does not contain any argument or analysis in support of the proposition that the trial court clearly abused its discretion by signing the Judgments. *See* Tex. R. App. P. 52.3(h) (stating that "[t]he petition must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the appendix or record"); *In re Akin Gump*, 252 S.W.3d at 495. Even construing the Gruss Parties' opening brief liberally, we cannot conclude that the Gruss Parties adequately briefed an argument that they are entitled to mandamus relief based on the trial court's clear abuse of discretion in signing the Judgments. *See City of Houston v. G.L.*, 560 S.W.3d 744, 751 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *In re Akin Gump*, 252 S.W.3d at 495. Thus, if we were to treat the Gruss Parties' appellate

brief as a petition for writ of mandamus, the Gruss Parties would not have shown their entitlement to mandamus relief due to this briefing waiver. *See In re Akin Gump, LLP,* 252 S.W.3d at 495. In this context, judicial efficiency does not militate against requiring the appellants to file a separate original proceeding. *See G.L.,* 560 S.W.3d at 751. Therefore, we do not treat the Gruss Parties' appellate brief as a petition for writ of mandamus. *See CMH Homes*, 340 SW.3d at 453–54; *G.L.,* 560 S.W.3d at 751.

### III. CONCLUSION

Under the plain text of the Judgments and considering the Judgments' substance, character, and function, the second sentence of paragraph 6 and paragraph 7 of the Judgments grant a new temporary injunction and are subject to an interlocutory appeal under section 51.014(a)(4) of the Civil Practice and Remedies Code. In the Judgments the trial court does not fix the amount of security to be given as to either of these temporary injunctions. Thus, we reverse the second sentence of paragraph 6 and paragraph 7 of the Judgments, declare these parts of the Judgments void, and order them dissolved.

Under the plain text of the Judgments and considering the Judgments' substance, character, and function, in the first sentence of paragraph 6 of the Judgments the trial court effectively granted a motion to dissolve the August 13, 2019 temporary injunctions. Thus, this court has jurisdiction over the Gruss Parties' interlocutory appeal from this part of the Judgments under section 51.014(a)(4) of the Civil Practice and Remedies Code. The trial court's interlocutory rulings on the merits of the declaratory-judgment claims are not changed circumstances authorizing dissolution of the trial court's temporary injunctions, and the motion to dissolve was not based on fundamental error. Therefore, the trial court clearly abused its discretion in granting the motion to

31

dissolve the August 13, 2019 temporary injunctions. We reverse the first sentence of paragraph 6 of the Judgments and render judgment denying the motion to dissolve and reinstating the temporary injunctions.

The Gallagher Parties have not shown that the appeal in cause number 14-21-00180-CV should be dismissed because no party in the Third Case sought a declaratory judgment as to the effect of the Agreement on the transfer of ownership of the Company's stock from the Estate to Acquisition Trust. The Gallagher Parties have not shown that the Company should be stricken as an appellant.

This court lacks interlocutory appellate jurisdiction over paragraphs 3-5 of the Judgments, and therefore we dismiss the fourth, fifth, sixth, and seventh issues for lack of appellate jurisdiction. Concluding that judicial efficiency does not militate against requiring the appellant to file a separate original proceeding, we do not treat the Gruss Parties' appellate brief as a petition for writ of mandamus.

/s/    Randy Wilson
Justice

Panel consists of Justices Wise, Poissant, and Wilson.